ROBERT J. SPEERS *vs.* H. P. HOOD, INC.; BLOOM, SOUTH & GURNEY, INC., third-party defendant.

Suffolk.   April 16, 1986. — July 30, 1986.

Present: PERRETTA, KAPLAN, & WARNER, JJ.

*Indemnity. Contract,* Indemnity.

In a contract for repair work at a processing plant, a provision by which
the contractor assumed broad indemnity obligations toward the owner
of the plant, including liability arising from acts or omissions of the
contractor or its agents or employees in the fulfillment of the contract,
whether the acts or omissions were negligent or nonnegligent, protected
the plant owner from liability for injuries suffered by an employee of
the contractor, even if the injuries were caused solely by the plant
owner's negligence. [599-602]

CIVIL ACTION commenced in the Superior Court Department
on December 2, 1980.

A motion for summary judgment on a third-party complaint
was heard by *William G. Young,* J., and entry of judgment
was ordered by *Hiller B. Zobel,* J.

*Joseph J. Walsh* for Bloom, South & Gurney, Inc.
*Andre A. Sansoucy* for H. P. Hood, Inc.

KAPLAN, J.   H.P. Hood, Inc. (Hood), operates a plant in
Newport, Maine,[1] for the manufacture of cottage cheese. It
had a need for "regrouting" a split brick floor in a processing
area on the second level of the building. This would consist
largely of filling in or replacing mortar which tended to deterior-
ate by reason of contact with milk and other fluids. The com-
pany of Bloom, South & Gurney, Inc. (BSG), had regularly
done similar work for Hood in its plants in New England. BSG
accepted a purchase order covering the regrouting job (actually
it included other work at the plant as well). Paragraphs 6 and

---

[1] Neither party asserts that the law of any State other than Massachusetts
is to be applied.

7 of the document set forth the indemnity provision and a related insurance provision that are the subject of the dispute here.

A BSG crew arrived at the plant on the morning of May 1, 1980, and Robert Speers, a tile helper employed by BSG, commenced regrouting a floor area adjacent to a holding tank No. 2. This contained a 40% solution of sodium hydroxide which, evidently in further diluted form, was used to clean processing equipment. After working a while, Speers complained of pain on the surfaces of his legs and arms. It turned out that he was suffering from burns that might be traceable to some quantity of the caustic (or its residue) that could have found its way from the tank onto the floor.

For his injuries, Speers, plaintiff, brought the present action in Superior Court against Hood, defendant, charging it with negligence in failing to provide safe conditions of work (and so forth). Hood, as third-party plaintiff, impleaded BSG, third-party defendant, asserting under the indemnity provision that BSG would be liable to it for any damages that might be recovered by Speers in the main action.[2] After the pleadings were completed in usual course, there was a certain amount of pretrial activity — requests for admissions, interrogatories, and depositions upon oral examination designed on BSG's part to explore the possible issues of Hood's concurrent or sole negligence. Finally Hood moved for summary judgment against BSG. This was based, not upon any claim or showing that Hood was free of negligence, but rather upon the proposition that Hood would be entitled to indemnification under the contract provision even if Speers should ultimately recover a judgment against Hood with a finding that Hood was solely negligent. A judge of the Superior Court agreed with Hood's contention, and BSG appeals to this court from a judgment declaring in Hood's favor.[3] We affirm, following, as will appear, the

---

[2] A right to common-law indemnity was also asserted but may be disregarded for present purposes.

[3] A motion under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), was made and allowed to permit entry of a separate appealable judgment.

lines of reasoning of *Shea* v. *Bay State Gas Co.*, 383 Mass. 218 (1981); see also *Whittle* v. *Pagani Bros. Constr.*, 383 Mass. 796 (1981); *Aho* v. *Blanchette*, 18 Mass. App. Ct. 149 (1984).

The contract paragraphs in question are reproduced in the margin.[4] As indicated in *Shea*, 383 Mass. at 222, an indemnity provision is no longer to be read with any bias in favor of the indemnitor and against the indemnitee;[5] it is to be interpreted like any ordinary contract, with attention to language, background, and purpose.

Present paragraph 6 is compact and brief,[6] but its meaning seems reasonably clear. BSG is to save Hood harmless from all claims, damages, actions, liability, or loss arising from acts, or omissions to act, of BSG or its agents or employees in the fulfillment of the contract, be the acts or omissions negligent or nonnegligent. Whatever the outer bounds described by this language, we think they comprise Speers' acts on the brick floor and his claim against Hood for his injuries, such as it might be, arising from that performance. So far the indemnity reaches; the text does not suggest that it stops short

---

[4] "6. That you [BSG] promise to indemnity and hold H.P. Hood Inc. harmless at all times from any of the following arising by the negligent or non-negligent act or omission to act in the fulfillment of this contract of yourself or your agents, employees, independent contractors or others: patent infringements, contributions or taxes, and any and all claims, damages, actions, liability, loss, cost or expense.

"7. That you are to furnish evidence to H.P. Hood Inc. by delivering certificates that insurance is in effect in the following minimum amounts for the risk indicated:

Public Liability (Bodily Injury) Each Person $100,000; each accident $300,000.

Public Liability (Property Damage) Each Person $50,000,; each accident $50,000.

(Public Liability shall include coverage for Operations, Products, when a product is sold by you to H.P. Hood, Inc. and Contractual Liability to cover the above indemnity agreement.)"

[5] In the absence of protection through insurance, promises of indemnity were often rightly thought hazardous for indemnitors because these might cast upon them liabilities greatly in excess of the value of the contracts proper.

[6] So compact that patent infringement is thrown in with the rest.

of a case where the indemnitee is itself concurrently or solely negligent.[7] *Shea* teaches that, where the sense is reasonably clear, an indemnity provision may be read to cover situations of indemnitee's negligence although there is no explicit statement to that effect: *Shea* was an instance of such interpretation where it was assumed that the indemnitee's negligence was concurrent with that of the indemnitor and a third party. 383 Mass. at 219-220.

Here we have a common situation in which Speers would ordinarily have worker's compensation through his relation to his own employer, BSG. Hood, however, is exposed to possible common law liability at the suit of Speers. Quite naturally, Hood wants to shed this possible responsibility toward a worker not part of its force, and proceeds to shift it to the worker's own employer, the independent contractor temporarily on the premises to do a particular job. See *Whittle* v. *Pagani Bros. Constr.*, 383 Mass. at 797, 799-800; *American Agricultural Chem. Co.* v. *Tampa Armature Works, Inc.*, 315 F.2d 856, 858 (5th Cir. 1963); *Stern* v. *Larocca*, 49 N.J. Super. 496, 507 (1958). It is expected that BSG will obtain insurance to meet this contract-assumed risk. Indeed, this is dealt with in paragraph 7, which describes the types of insurance that BSG is to obtain and their minimum amounts. These contract provisions represent bargains about the allocation of the burdens of procuring insurance, see *Shea*, 383 Mass. at 224. The allocation to BSG meant that BSG was to load some applicable part of the cost of the insurance into the prices charged to Hood; otherwise it would charge prices net of that cost, which would then be borne by Hood. See *Day* v. *Ocean Drilling & Exploration Co.*, 353 F. Supp. 1350, 1352-1353 (E.D. La. 1973).[8]

---

[7] Furthermore, that the indemnity extends to cases where the indemnitor's employee is nonnegligent suggests that in those events the indemnitee may have been negligent.

[8] Recent legislation voiding contract provisions that require a construction subcontractor to indemnify any party for injury not caused by the subcontractor or his agents, tends to determine such allocation in the particular situations. See G. L. c. 149, § 29C, as appearing in St. 1985, c. 288, § 3. The statute does not affect the present case.

In its brief, BSG appears prepared to accept, if grudgingly, that the indemnity provision would cover a case of concurrent negligence on the part of Hood, as in *Shea*, but it balks at a case of sole negligence. Such a distinction would be hard to maintain. It would make little appeal to practicality or considerations of conscience, since insurance is available for both kinds of exposure, and is not less called for to reach the latter than the former. There are, of course, plenty of decisions that allow indemnitees to secure protection through indemnity provisions against the consequences of their own sole negligence although that event was not expressly provided for. See, e.g., the *Aho, American Agriculture Chem. Co.*, and *Day* cases, all *supra*, and *Rice* v. *Pennsylvania R.R.*, 202 F.2d 861 (2d Cir. 1953); *Buffa* v. *General Motors Corp.*, 131 F. Supp. 478 (E.D. Mich. 1955); *Commercial Union Assur. Co.* v. *Brown Co.*, 120 N.H. 620 (1980); *Cozzi* v. *Owens Corning Fiber Glass Corp.*, 63 N.J. Super. 117 (1960).

*Judgment affirmed.*