DONALD H. JONES & others[1] *vs.* VAPPI & COMPANY, INC.;
GENERAL IRON & STEEL WORKS, INC., third-party
defendant.

No. 88-P-628.

Middlesex. October 12, 1989. - November 22, 1989.

Present: DREBEN, KASS, & WARNER, JJ.

*Indemnity. Contract*, Construction contract, Indemnity. *Statute*, Retroactive statute. *Damages*, Breach of contract, Attorney's fees.

The scope of an indemnity clause in a construction contract, requiring the subcontractor to indemnify the general contractor, placed unqualified responsibility on the subcontractor for injuries arising out of its part of the job. [79-81]

General Laws c. 149, § 29C, as effective before its revision by St. 1985, c. 228, § 3, had no retroactive application to an indemnity clause in a construction subcontract executed five years before that statute was enacted. [81-82]

The judge at a civil trial did not abuse his discretion in denying a defendant's motion to reopen the evidence in order to present testimony with respect to indemnification for legal expenses, in circumstances where the parties had already come to terms in complicated settlement negotiations during which, the judge found, that defendant made a tactical decision not to discuss that indemnity issue. [82-84]

CIVIL ACTION commenced in the Superior Court Department on July 25, 1979.

A motion for partial summary judgment on a third-party complaint was heard by *James F. McHugh*, J., and the case was tried before him.

*Thomas J. Lynch* for General Iron & Steel Works, Inc.
*Charles Mark Furcolo* for Vappi & Company, Inc.

KASS J. Donald Jones and Anthony Tokowicz were hurt when a steel beam on which they were sitting gave way during construction of a film processing plant for the Polaroid

---

[1]Brenda R. Jones and Anthony Tokowicz, Jr.

Corporation. For purposes of the appeal, which involves interpretation of an indemnity clause, the active players are Vappi & Company, Inc. ("Vappi"), the general contractor, and General Iron & Steel Works, Inc. ("General Iron"), a subcontractor to Vappi responsible for fabricating and erecting structural steel and steel decking. Jones and Tokowicz were employees of V & V Erectors, Inc. ("V&V"), to which General Iron had let a sub-subcontract for the erection work.

During the course of the trial, Vappi moved for summary judgment on the ground that it was the beneficiary of an indemnity obligation which it had imposed on General Iron in their subcontract. Vappi, as it construed the scope of the indemnity clause, would not be bound to pay damages to the plaintiffs in any event. The trial judge decided that question in favor of Vappi. Against the possibility that he might be mistaken on the indemnity issue, the judge astutely refrained from entering a judgment and kept Vappi in the case so that, should the indemnity point come out differently on appeal, the case would not have to be retried.

Before the case went to the jury, General Iron settled with all the plaintiffs[2] for $1,000,000 in exchange for full releases of itself, Polaroid, and Vappi. General Iron thereby succeeded in limiting its exposure to an aggregate $1,000,000 irrespective of the ultimate decision on the indemnity point. So that the indemnity question might be presented on appeal, the jury were then asked, by special verdict, to find who had been negligent. They determined that negligence lay with Vappi and V&V.[3] General Iron was found not negligent.

We turn now to the disputed language, which appears in Article III (10) of the subcontract between Vappi and General Iron. So far as pertinent, General Iron agreed:

[2]The $1,000,000 settlement was allocated one-half to Jones and his wife and one-half to Tokowicz. Ganteaume & McMullen, Inc., which provided architectural and engineering services for the job, placed an additional $230,000 in the settlement pot. That amount was similarly apportioned.

[3]V&V did not defend and a default judgment was entered against it conformably with Mass.R.Civ.P. 55(a) & (b)(1), 365 Mass. 822 (1974).

> "To indemnify and save the Contractor [Vappi] . . . harmless from and against any and all costs, loss, expense, liability, damages, or claims for damages arising or resulting from any work of the Subcontractor [General Iron], including attorney's fees, expenses and costs of defending any action on account of any injury or damage to property or persons, or on account of any other action against the Contractor . . . for any liability . . . arising out of any work performed by or required from the Subcontractor and on account of any injury (including death) to any persons or property arising or resulting from the Work provided for or performed by the Subcontractor . . . ."

1. *Scope of the indemnity clause.* General Iron attempts to elude the reach of the indemnity provision by arguing, first, that the indemnity clause does not apply because inadequate safety measures caused the accident and, under the contract, supervision and safety were not included in General Iron's work. It is an unpersuasive argument in light of the opinions in *Shea* v *Bay State Gas Co.,* 383 Mass. 218 (1981); *Whittle* v *Pagani Bros. Constr. Co.,* 383 Mass. 796, 798-799 (1981); *Aho* v. *Blanchette,* 18 Mass. App. Ct. 149, 151-152 (1984); and *Speers* v. *H.P. Hood, Inc.,* 22 Mass. App. Ct. 598 (1986). Those cases emphasize that indemnity provisions are not to be read grudgingly against the indemnitee but "like any ordinary contract, with attention to language, background and purpose." *Id.* at 600.

As to language, so far from excluding supervision, the definition of the scope of the work in Article I of the subcontract expressly calls upon the subcontractor to furnish "all things necessary to complete all work . . . including . . . supervision . . . ," and Article III(7) requires General Iron to comply with safety requirements in the general contract documents and to require similar compliance of its agents,

employees, and subcontractors.[4] References to supervision and safety only make the case easier. Even in their absence the indemnity clause is a broad one which places on General Iron unqualified responsibility for injuries arising out of its part of the job, the fabrication and erection of the steel. An explicit statement, as General Iron would have it, that the indemnity extended to matters of safety and supervision was not required. The purpose of an all encompassing clause of the sort used is to avoid becoming snared by an enumeration which omits the very mischance that, in the event, occurs.

Against the background of a moderately large construction project, it is unremarkable for a general contractor to shift to a subcontractor responsibility for claims connected to that subcontractor's work. See *Speers* v. *H.P. Hood, Inc.*, 22 Mass. App. Ct. at 601. The risk so allocated becomes the subject of insurance which the subcontractor, under Article VI of the subcontract, is required to carry. Compare *id.* At bottom, the purpose of the indemnity clause is to distribute among the subcontractors and suppliers insurance burdens covering their respective areas of responsibility. Recognition of that purpose reinforces reading the language of the contract for what it says, rather than for what it omits. Contrast *Bendetson* v. *Coolidge*, 7 Mass. App. Ct. 798, 801 (1979).

In a variation on its theme of limiting the scope of the indemnity clause, General Iron argues that the failure of the clause to state expressly that the subcontractor must indemnify Vappi even when it, as general contractor, is concurrently negligent[5] injects an ambiguity to be resolved against the contractor. Here again, General Iron attempts to find an implied exception in a clause which speaks of "*all* costs, loss, expense, liability, damages, or claims for damages arising or resulting from any work of the Subcontractor . . . or on ac-

---

[4]As might be expected, the general conditions for construction contracts on the Polaroid job require the contractor to "take all necessary precautions for the safety of employees." Par. 25(b).

[5]Although the jury found that General Iron had not acted negligently, General Iron could not — and did not — disclaim liability to Vappi for the negligence of V&V, to which General Iron had subcontracted work it was contractually bound to perform for Vappi.

count of *any* other action against the Contractor . . . for *any liability* . . . arising out of *any* work performed or required from the Subcontractor . . . " (emphasis supplied). The attempt cannot succeed without stripping the indemnity clause of a sensible and practical construction. See *Shea* v. *Bay State Gas Co.*, 383 Mass. at 223-224.

2. *Application of G. L. c. 149, § 29C.* There is not even surface merit to the argument that the indemnity clause is invalid by reason of G. L. c. 149, § 29C. In its first form, § 29C was inserted by St. 1984, c. 484, § 43. The subcontract between Vappi and General Iron was executed December 19, 1978, five years before the legislation was passed.[6] Except in the rarest instances and then, usually, only with respect to procedural matters, legislation operates prospectively, not retrospectively. *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 87-89 (1979), which discusses some of the reasons for the rule. *Cranberry Realty & Mortgage Co.* v. *Ackerley Communications, Inc.*, 17 Mass. App. Ct. 255, 258 (1983). See *Nationwide Mut. Ins. Co.* v *Commissioner of Ins.*, 397 Mass. 416, 421-423 (1986), for an illustration of a statute which, by reason of express language in it, retroactively displaced certain contract rights within constitutional limits. There is no language in the 1984 act from which an inference of intent to achieve retroactive effect may fairly be drawn. The act has no bearing on the contract before us.

General Iron wishes to invoke G. L. c. 149, § 29C, because, in its 1984 form, § 29C declared indemnity clauses in construction contracts which absolved indemnitees from their own negligence to be "against the public policy and . . . void and unenforceable." A substantial revision of § 29C was made soon thereafter by St. 1985, c. 228, § 3. Section 4 of the 1985 act made the amendment retroactively effective as of April 7, 1985, the effective date of the 1984 act. The later version of § 29C was, therefore, a total substitution for the original. It is less sweeping and declares void indemnity provisions in construction contracts only when the

---

[6]The accident occurred February 20, 1979.

injury is "not caused by the subcontractor or its employees, agents or *subcontractors* . . . " (emphasis supplied). Even if § 29C, therefore, were given retroactive effect, it affords General Iron no comfort as General Iron's subcontractor, V&V, was a cause of the injury.

3. *The indemnitee's counsel fees.* As part of its indemnity claim, Vappi was entitled to recovery of reasonable counsel fees and legal costs incurred in defending the claim. *Amoco Oil Co.* v. *Buckley Heating, Inc.,* 22 Mass. App. Ct. 973 (1986), and cases cited. It was open to Vappi to pursue those legal expenses as part of a separate indemnity action brought after completion of the negligence action. See, e.g., *New England Merchants Natl. Bank* v. *Latshaw,* 12 Mass. App. Ct. 150, 152-153 (1981); *Wolverine Ins. Co.* v. *Tower Iron Works, Inc.,* 370 F.2d 700, 703 (1st Cir. 1966). As an alternative, Vappi could assert its claim to indemnification as a cross claim within the negligence action. See Mass.R.Civ.P. 13(g), 365 Mass. 759 (1974); *Lusk* v. *Pennzoil United, Inc.,* 56 F.R.D. 645, 647-648 (N.D. Miss. 1972). That is the course Vappi chose.

Through the close of the evidence, however, Vappi offered no evidence and, indeed, made no mention of the legal fees component of its cross claim in a pretrial memorandum. There were some understandable reasons for keeping the legal expenses issue on the back burner. At the beginning of the trial, considerable expense had yet to be run up and an estimate might have been seriously inaccurate. After the trial judge had decided the indemnity question on Vappi's motion for summary judgment, he ordered counsel not to refer to the indemnity issue in front of the jury, and that acted as a further inhibition to touching on the subject.

On June 17, 1986, there occurred a lobby conference at which counsel for the plaintiffs and for General Iron described the general terms of a settlement hammered out by them the previous evening, namely the $1,000,000 settlement previously adverted to. There ensued a discussion among the judge and counsel for all parties in the case at which they considered: (1) the terms of the $1,000,000 settlement; (2)

what questions were to be put to the jury; and (3) how the indemnity question was to be preserved for appeal. Those subjects were interrelated. Vappi, for example, contended that the settlement should also require General Iron to give up its appeal on the indemnity point. The discussion appears to have consumed the better part of two hours and the subject of Vappi's legal expenses came up in the most peripheral fashion. In an attempt to induce General Iron to waive an appeal on the indemnity question, counsel for Vappi offered to contribute some $50,000 in estimated legal expenses to the settlement funds, an offer which General Iron declined. Nothing more was said about when and how the legal expenses issue was to be tried. When the lobby conference ended, the judge could reasonably have concluded that the evidentiary phase of the case was over.

On June 18, 1986, the next day, Vappi and Polaroid, which were represented by the same counsel, moved for leave to present to the judge, jury-waived, evidence of fees and costs attendant upon their defense. Their motion was denied.

Whether to admit additional evidence after a party has rested lies within the sound discretion of the trial judge. *Kerr v. Palmieri*, 325 Mass. 554, 557 (1950). *Duchesneau* v. *Jaskoviak*, 360 Mass. 730, 734 (1972). *Dominick* v. *Dominick*, 18 Mass. App. Ct. 85, 90 (1984). The judge, in a memorandum he filed about posttrial matters, recognized that the discretion to admit additional evidence after the evidence has formally closed may be indulgently exercised to remedy an oversight discovered shortly thereafter, before parties have changed position and before the case has gone to a next phase. In his memorandum the judge observed that between the end of the lobby conference and the presentation of the Vappi-Polaroid motion there had occurred "a major restructuring of the positions of several parties." General Iron, for example, may have chosen not to settle for $1,000,000 had it been placed on notice that further exposure loomed.

On appeal Vappi[7] argues, as it did to the trial judge, that the peculiar structure of the trial led it reasonably to expect that the legal expenses would be handled as a separate matter and that, indeed, introducing the subject within the hearing of the jury was likely to incur the judge's wrath. No doubt Vappi was correct in steering clear of the subject within the jury's hearing, but it was not so constrained during the long lobby conference. In that setting, the legal expenses were a factor for the judge to take into account in solving the complicated equation presented by the settlement. Implicit in the judge's memorandum is his finding that Vappi-Polaroid had made a tactical decision to keep mum about further indemnity for legal expenses while the settlement was discussed. Such a finding was not compelled but is scarcely clearly erroneous. The judge did not abuse his discretion in denying the motion to reopen the evidence.

*Judgments affirmed.*

---

[7]Only Vappi filed a cross appeal from the judgment. Polaroid had the benefit of an indemnity provision running from Vappi.