927 F.2d 26
 David L. COHEN, Plaintiff, Appellee,
v.
STEVE'S FRANCHISE CO., INC., and Steve's Ice Cream, Inc.,
Defendants, Appellants,
v.
Paul CURRY and Philip Katz, Trustees of C & K Investment
Trust, Third-Party Defendants, Appellees.
 No. 90-2070.
 United States Court of Appeals,
First Circuit.
 Heard Feb. 6, 1991.
Decided Feb. 28, 1991.
 
 Francis X. Kiley with whom Linehan, Gallagher and Mahoney, was on brief, Boston, Mass., for defendants-appellants.
 Jason G. Yarvitz, Wakefield, Mass., with whom Law Office of William J. Dignan, was on brief, Quincy, Mass., for third-party defendants, appellees.
 Before CAMPBELL, and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.
 LEVIN H. CAMPBELL, Circuit Judge.
 
 
 1
 The original plaintiff in this diversity case, David Cohen, sustained personal injuries in a fire while he was employed at a Steve's Ice Cream booth in Faneuil Hall Marketplace in Boston. Cohen sought damages from, inter alia, defendant Steve's Franchise Co., Inc. and Steve's Ice Cream, Inc., (collectively, "Steve's"), as well as others allegedly involved in the manufacture and distribution of a certain flammable orange extract that allegedly caused the fire. The plaintiff thereafter settled his claim against Steve's for one hundred thousand dollars. Seeking indemnity, Steve's brought a third-party complaint against Paul Curry and Philip Katz, Trustees of Cohen's employer, C & K Investment Trust ("C & K"), which at the time of the accident had been managing the Steve's Ice Cream booth in Faneuil Hall pursuant to a franchise agreement with Steve's. The franchise agreement contained indemnification provisions running from C & K to Steve's, and, based on these, Steve's moved for summary judgment in its favor. C & K opposed the motion and filed its own motion for partial summary judgment. Steve's now appeals from the district court's denial of its motion for summary judgment and its allowance of C & K's partial motion for summary judgment. The district court held that "plaintiff's claims do not fall into the category of claims which would obligate C & K to indemnify Steve's." Applying Massachusetts contract law, we find that Steve's is entitled to indemnification under the franchise agreement, and therefore reverse.
 
 Facts
 
 2
 The essential facts are not disputed. The original plaintiff, Cohen, was injured on October 22, 1985, while he was making a chocolate ice cream at the Steve's Ice Cream Faneuil Hall booth. He was melting chocolate on an electric burner when a bottle of the orange extract, stored on a shelf above the electric burner, leaked onto Cohen and onto the burner. The extract ignited; the flame backed up to the extract in the container and Cohen also caught on fire. As a result of his severe burns, Cohen was hospitalized for more than two weeks.
 
 
 3
 On August 13, 1982, Steve's had entered into a franchise agreement with Curry and Katz, who were represented by and had the advice of an attorney at the time they executed the agreement. Under Massachusetts law, we presume that Curry and Katz understood and intended the plain meaning of the agreement's language under all the circumstances. See Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 509 N.E.2d 1190, 1192 (1987) ("In a business context such as this, there is far less reason to designate such agreements as unconscionable than in the typical consumer transaction."). Katz testified at his deposition that a management agreement was executed with Steve's Franchise Co., Inc. for a one year term ending in December, 1983, after which date C & K managed the franchise. Katz identified the signatures of himself and Curry on the franchise agreement as well as their initials on the specific page of the indemnification provision. Under the franchise agreement, the parties agreed that C & K would indemnify Steve's for any liability occurring
 
 
 4
 by reason of any claimed act or omission by FRANCHISEE, his employees or agents, or by reason of any act or omission occurring on the premises, or by reason of any act or omission with respect to the business or operation of the STEVE'S ICE CREAM STORE,....[1]Parties' Positions on Appeal
 
 
 5
 To support its holding that C & K was not obligated to indemnify Steve's, the district court provided little analysis. We may assume, however, that it was persuaded by the same considerations C & K now advances on appeal, to wit, that an exception should be implied to C & K's otherwise comprehensive agreement to indemnify Steve's, where, as here, the injuries sought to be indemnified stemmed from Steve's own fault. Thus C & K asserts, and Steve's does not dispute, that C & K was obligated under the franchise agreement to "comply strictly" with Steve's standards and specifications with respect to operation of the booth. Steve's specified the ingredients and methods for preparing the products, as well as all other services, supplies and materials used at the store, including the flammable extract which gave rise to plaintiff's claim. C & K also submits, and Steve's likewise concedes for purposes of the summary judgment motions, that Steve's exercised the lion's share of operational control over those aspects of the business operation that resulted in the plaintiff's injuries--"that the claimed negligent acts were those of Steve's, in its selection of containers and labeling of the product, and in its layout design of the store itself."
 
 
 6
 Steve's position on appeal is that, while the foregoing facts may well be so, they do not, under Massachusetts law, justify an exception to the broad indemnification provision in the franchise agreement. Steve's contends that, as a matter of law, the provision entitles it to be indemnified by C & K for plaintiff's recovery against it. Steve's, therefore, seeks reversal of the judgment below.
 
 
 7
 Construction of the Indemnification Provisions
 
 
 8
 In Massachusetts, "[c]ontracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." Shea v. Bay State Gas Co., 383 Mass. 218, 418 N.E.2d 597, 600 (1981) (citations omitted). Moreover, "something less than an express reference in the contract to losses from the indemnitee's negligence as indemnifiable will suffice to make them so if the intent otherwise sufficiently appears from language and circumstances." Id. (citations omitted). In Shea, the Massachusetts Supreme Judicial Court, in order to avoid construing a "contractual liability" clause to constitute surplusage, held that the clause at issue provided the indemnitee with indemnification against its own concurrent negligence.
 
 
 9
 In Speers v. H.P. Hood, Inc., 22 Mass.App.Ct. 598, 495 N.E.2d 880, 882, rev. denied, 398 Mass. 1105, 498 N.E.2d 125 (1986), the Massachusetts Appeals Court, following Shea, construed an agreement to provide indemnification in the case of the indemnitee's sole negligence, where that event was not expressly provided for.[2] The Speers court relied on the Shea court's recognition that, "[r]ealistically viewed, the shift of liability is a shift in the burden of providing adequate insurance coverage." Shea, 418 N.E.2d at 601 (citations omitted). Based on this recognition, the Speers court reasoned that a distinction between allowing indemnification for the indemnitee's concurrent negligence and the indemnitee's sole negligence would make little sense, "since insurance is available for both kinds of exposure, and is not less called for to reach the latter than the former." Speers, 495 N.E.2d at 882.
 
 
 10
 C & K argues that plaintiff's injury and subsequent recovery against Steve's here resulted only from Steve's decisions concerning the choice of extract and extract packaging, store layout and operations, and did not arise as a result of C & K's own acts or omissions. C & K maintains that a fair and reasonable interpretation of the agreement is that the parties intended that C & K would indemnify Steve's only under circumstances where C & K had operational control over the matters underlying the accident. C & K suggests, as an example of such circumstances, injury resulting from unsanitary contamination of the ice cream, since C & K would have full control over the cleanliness and sanitary conditions in the store.
 
 
 11
 We think C & K's reading is too narrow. The indemnification provision includes three clauses, encompassing circumstances where the liability arises by reason of acts or omissions: (1) by the franchisee; (2) occurring on the premises; or (3) with respect to the business or operation of the store. Circumstances where C & K had operational control of the business, such as cleanliness, would fall within the purview of acts or omissions by the franchisee, and would render superfluous the additional broader clauses relating to acts or omissions on the premises or relating to the business or operation of the store. A reading rendering contract language meaningless is to be avoided. Shea, 418 N.E.2d at 601.
 
 
 12
 The broad language contained in the third clause is quite explicit: C & K agreed to indemnify Steve's for any liability arising "by reason of an act or omission with respect to the business or operation of the STEVE'S ICE CREAM STORE...." Even if the business decisions, negligent or non-negligent, which caused this accident were exclusively those of Steve's, these acts or omissions were "with respect to the business or operation" of the store. Choice of supplies and packaging, methods of food preparation, and layout of the booth were all acts or omissions of this nature.
 
 
 13
 Likewise, even supposing all acts or omissions at the Steve's Ice Cream booth were, insofar as attributable to C & K, non-negligent and were undertaken in compliance with Steve's specifications, the accident at issue indisputably occurred "by reason of acts or omissions occurring on the premises." The flammable extract was placed on a shelf above the burner and leaked onto the plaintiff who was melting chocolate on the hot burner below.
 
 
 14
 The conjunction of the indemnification language with the immediately following insurance agreement, constituting the two subsections within the section of the franchise agreement entitled "INDEMNIFICATION AND INSURANCE," likewise supports this conclusion. See note 1, supra. Placing the risk by agreement on C & K, and explicitly allocating the burden of obtaining insurance, including product liability insurance, on C & K was a "sensible business judgment." Minassian, 509 N.E.2d at 1192. C & K may have been obligated to comply with Steve's operations specifications, but being closer to the actual operation of the business C & K would have been better positioned to notice and rectify potential safety hazards (such as the proximity of a flammable extract to a hot burner), either within its own control or by notifying Steve's of the problem. Moreover, under the circumstances here, the plaintiff, Cohen, would ordinarily have worker's compensation through his relation to his employer, C & K, whereas Steve's would be exposed to common law liability; thus, the parties might rationally agree to shift the responsibility to plaintiff's own employer, C & K. See Speers, 495 N.E.2d at 882.
 
 
 15
 In sum, we believe that a Massachusetts court would not limit the reach of the indemnification agreement to those circumstances where C & K had operational control of the business. Finding the language and circumstances of the franchise agreement to support this conclusion, we construe the franchise agreement to provide that C & K would indemnify Steve's even for Steve's sole negligence. C & K must, therefore, indemnify Steve's here.
 
 
 16
 Reversed and remanded for proceedings not inconsistent herewith. Costs to appellants.
 
 
 
 [1]
 The quoted indemnification clause appeared in the franchise agreement as subsection A of section XII, titled "INDEMNIFICATION AND INSURANCE." Subsection B provided:
 FRANCHISEE shall at all times during the term of this Agreement maintain in force at its sole expense comprehensive public liability and product liability insurance.... Further, FRANCHISEE shall at all times maintain and pay for fire, and extended coverage insurance upon the STEVE'S ICE CREAM STORE building, fixtures, and equipment in an amount not less than ninety (90%) percent of their then true replacement value.
 In addition, section XX, titled "INDEPENDENT CONTRACTOR," provided that,
 under no circumstances shall FRANCHISOR be liable for any act, omission, debt or any other obligation of FRANCHISEE. FRANCHISEE shall indemnify and save FRANCHISOR harmless against any such claim and the cost of defending against such claims arising directly or indirectly from, or as a result of, or in connection with, FRANCHISEE'S operation of the franchised business.
 
 
 [2]
 Justice Kaplan, who had been a member of the Supreme Judicial Court's Shea panel, wrote for the Appeals Court in Speers as follows: "As indicated in Shea ..., an indemnity provision is no longer to be read with any bias in favor of the indemnitor and against the indemnitee [footnote omitted]; it is to be interpreted like an ordinary contract, with attention to language, background, and purpose." 495 N.E.2d at 881