USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ Nos. 95-2051 95-2207 CHARLES MACGLASHING AND SHARLENE MACGLASHING, Plaintiffs, Appellees, v. DUNLOP EQUIPMENT COMPANY, INC., Defendant, Appellee. ____________________ RESTORATION PRESERVATION MASONRY, INC., Third-Party Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Reginald C. Lindsay, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Coffin and Bownes, Senior Circuit Judges. _____________________ ____________________ Robert P. Powers, with whom Michael R. Byrne, Andre A. Sansoucy, ________________ _________________ __________________ and Melick & Porter were on brief for Restoration Preservation ________________ Masonry, Inc., appellant. Thomas G. Hoffman, with whom Thomas M. Greene, Paul D. Hoffman, __________________ _________________ _______________ Greene & Hoffman, P.C. were on brief for Charles MacGlashing and ________________________ Sharlene MacGlashing, plaintiffs, appellees and Dunlop Equipment Company, Inc., defendant, appellee. ____________________ July 25, 1996 ____________________ BOWNES, Senior Circuit Judge. This appeal concerns BOWNES, Senior Circuit Judge.  _____________________ the interpretation and enforceability of an indemnification clause in a lease between third-party defendant-appellant Restoration Preservation Masonry, Inc. ("RPM") and defendant- appellee Dunlop Equipment Company, Inc. ("Dunlop"). Plaintiff-appellee Charles MacGlashing was injured when an elevated work platform leased by Dunlop to RPM collapsed while he and another employee of RPM were using it in their masonry work. MacGlashing and his wife, residents of New Hampshire, brought a diversity action in tort against Dunlop, a Massachusetts corporation, in the district court of Massachusetts. Dunlop sued RPM, invoking the lease indemnification clause. Prior to trial the MacGlashings, with court approval, entered into a settlement agreement with Dunlop. The issue on appeal is whether the MacGlashings, standing in the shoes of Dunlop, can collect the amount of the settlement from RPM under the indemnification clause of the lease between RPM and Dunlop. This issue was decided in favor of the MacGlashings and Dunlop by summary judgment. There is no question that Massachusetts law applies.  RPM maintains that it has no obligation under the lease agreement to indemnify Dunlop for damages flowing from Charles MacGlashing's accident because Dunlop materially breached the agreement. It also challenges the scope of the -2- 2 indemnification clause. Discerning no error in the district court's summary judgment analysis, we affirm. I. I. BACKGROUND BACKGROUND __________ Viewed in the light most favorable to RPM, the nonmoving party, the facts are as follows. RPM, a Massachusetts-based corporation, employed Charles MacGlashing as a brick mason until September 2, 1993, when he was involved in a work-related accident at The Longwood Towers located in Brookline, Massachusetts. In 1993, the Longwood Corporation ("Longwood"), owner of The Longwood Towers complex, commissioned RPM to conduct phase II of a renovation project at Longwood Towers. Like phase I, which had been completed a year earlier by NER, Inc. ("NER"), phase II involved removal and replacement of brick and stone at the top of three eight-story buildings located in the complex. RPM was formed by former employees of NER. Several of them, including RPM's president Paul Haven, had worked on phase I. During both phase I and II, mobile, elevated work platforms fitted with eight-foot outrigger devices, which extended off the main platform to expand its width, were utilized for stone and brick removal and to make certain setback portions of the buildings accessible. The outriggers were modifications to the original platform design.  -3- 3 On September 2, 1993, MacGlashing and a co-worker, James Proctor, were removing a piece of stone from the parapets of Building B when the work platform they were using collapsed. Both men fell eight stories to the ground. Proctor died from the injuries he sustained. MacGlashing, who was thirty-nine at the time, survived, but suffered injuries that hospitalized him for six months and left him partially paralyzed and in constant pain. These injuries included, inter alia, broken bones, internal and neurological _____ ____ damage, a ruptured aorta and bladder, a perforated colon, lung damage, and lacerations. MacGlashing incurred more than $800,000.00 in medical fees and expenses as a result of the accident. His future medical costs and net economic loss have been projected between $600,000.00 to $1.1 million and $1.1 million to $1.3 million, respectively. At trial, the parties agreed that the platform involved in the accident collapsed because it could not bear the weight placed on it, but disagreed about whether the platform had been defectively designed, used negligently, or negligently modified by Dunlop. Dunlop, whose business consists of supplying work platforms for sale or lease, provided the platforms employed in both phase I and II of the Longwood Towers renovation project. It executed a July 7, 1993, lease agreement to provide four platforms with RPM's president, Paul Haven, who had left NER to form RPM.  -4- 4 The lease agreement executed between RPM and Dunlop was a standard form contract and contained the following indemnification clause: 12. THE LESSEE HEREBY ABSOLVES THE LESSOR OF ANY RESPONSIBILITY OR OBLIGATION IN THE EVENT OF ACCIDENT, REGARDLESS OF CAUSES OR CONSEQUENCES, AND THAT ANY COSTS, CLAIMS, COURT OR ATTORNEY'S FEES, OR LIABILITY RESULTING FROM THE USE OF DESCRIBED EQUIPMENT WILL BE INDEMNIFIED BY THE LESSEE REGARDLESS AGAINST WHOM THE CLAIMANT OR CLAIMANTS INSTITUTE ACTION. II. II. PROCEEDINGS BELOW PROCEEDINGS BELOW _________________ The MacGlashings brought a federal diversity jurisdiction suit, see 28 U.S.C. 1332(a), against Dunlop, ___ seeking recovery on theories of negligence, product liability, and breach of warranty. They charged Dunlop with negligence in the design and modification of the work platforms leased to RPM, negligence in failing to inspect the platforms and repair defects and damage, and negligence in failing to warn and instruct RPM employees in the use of the platform. They also asserted that Dunlop breached the implied warranty that the work platforms were merchantable and fit for their intended use. The MacGlashings later amended their complaint to assert claims against Longwood under Mass. Gen. L. ch. 143, 51. These claims are not relevant to this appeal.  -5- 5 Dunlop filed a third-party complaint against RPM, seeking indemnification pursuant to their lease agreement. RPM denied any indemnification responsibility and counterclaimed, alleging that Dunlop materially breached the lease agreement by providing defective and unreasonably dangerous equipment.  Each of the parties filed summary judgment motions before the magistrate judge. Dunlop and the MacGlashings moved for summary judgment on Dunlop's third-party complaint. They maintained that, under the indemnification clause contained in the lease agreement, RPM was obligated to indemnify Dunlop for any liability resulting from the use of the leased equipment and that Dunlop did not materially breach its obligations under that agreement. RPM contested this joint motion and filed its own motion for summary judgment on Dunlop's third-party claims. In both instances, it contested the enforceability of the lease agreement executed with Dunlop, claiming that Dunlop materially breached the implied warranties of merchantability and fitness for a particular purpose contained in the agreement by failing to test the load-bearing capacity of the work platforms and outriggers prior to delivery of them to the project site. The case was assigned to a magistrate judge. In her report and recommendations, she first addressed RPM's -6- 6 summary judgment motion. The magistrate judge denied RPM's claim that the lease agreement it executed with Dunlop included an implied warranty of fitness for a particular purpose, under Mass. Gen. L. ch. 106, 2-315, but agreed that it contained an implied warranty of merchantability, under Mass. Gen. L. ch. 106, 2-314. The magistrate judge recommended that RPM's motion for summary judgment be denied because she found that genuine issues of material fact existed as to whether Dunlop breached its implied warranties. Turning to the joint motions for summary judgment filed by Dunlop and the MacGlashings, the magistrate judge concluded that the record, viewed in RPM's favor, precluded a dismissal with prejudice, of RPM's counterclaim for breach. She recommended, however, that Dunlop and the MacGlashings' joint motion for summary judgment on Dunlop's third-party complaint be allowed. The magistrate judge found that, barring a determination that Dunlop materially breached the lease agreement, RPM was "obligated to indemnify Dunlop for any liability resulting from Charles MacGlashing's use of the leased equipment." She concluded that "whether Dunlop's conduct amounted to a material or serious breach of the contract" was an issue of fact for the jury. Each of the parties filed timely objections to the magistrate judge's report.  -7- 7 The district court issued an order accepting, in part, and modifying, in part, the Report and Recommendation of the magistrate judge. The district court agreed with the magistrate judge's determination that RPM's motion for summary judgment should be denied. While it also agreed that summary judgment in favor of Dunlop and the MacGlashings was appropriate on Dunlop's third-party complaint, the court rejected the magistrate judge's conclusion that RPM's obligation to indemnify Dunlop for damages arising from Charles MacGlashing's injuries could be relieved by a material breach by Dunlop. The court held that, under Massachusetts law, a party's breach of an implied warranty was insufficient to invalidate a broadly worded indemnification clause.  The district court scheduled a jury trial on the various claims asserted by the parties. Before the trial date arrived, however, the MacGlashing's entered into a settlement agreement with Dunlop, subject to court approval. The settlement contemplated satisfying the MacGlashings' suit for damages against Dunlop with a $750,000.00 cash payment -- approximately 75 percent of the insurance coverage available to Dunlop through its insurer -- and the assignment of Dunlop's claims against RPM and Longwood to the MacGlashings. Under the agreement, judgment was to enter in favor of Charles MacGlashing in the amount of $4,560,000.00 and in -8- 8 favor of Sharlene MacGlashing for $300,000.00. The MacGlashings agreed to seek no further recovery from Dunlop in the event they could not recover from RPM or Longwood.  The district court held a hearing and reviewed evidence before approving the settlement. At the hearing RPM's counsel stated, inter alia: __________ I don't believe that RPM has any objection to the structure of the settlement under the current circumstances . . . I believe that the settlement is fair and equitable under these circumstances. The district court approved the settlement. The claims against Longwood were tried to a jury which returned a verdict in favor of Longwood. The district court issued a final judgment dismissing the action of the MacGlashings against Longwood, entering judgment against Dunlop, and ordering that Charles MacGlashing recover $4,651,739.23 and his wife, $306,032.52 -- the amount of the settlement plus post-judgment interest at the rate of 5.86% -- from RPM. This appeal followed.  III. III. STANDARD OF REVIEW STANDARD OF REVIEW __________________ We review the district court's grant of summary judgment de novo and review the record in the light most __ ____ favorable to the nonmoving party, drawing all inferences in that party's favor. Den Norske Bank AS v. First Nat'l Bank _______________________________________ of Boston, 75 F.3d 49, 53 (1st Cir. 1996); EEOC v. Green, 76 _________ _____________ -9- 9 F.3d 19, 23 (1st Cir. 1996). "Our review is limited to the record as it stood before the district court at the time of its ruling." J. Geils Band Employment Benefit Plan v. Smith ______________________________________________ Barney Shearson, Inc., 76 F.3d 1245, 1250 (1st Cir. 1996). _____________________ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Allegations of a factual dispute "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, ________________________________________ 30 (1st Cir. 1995)(quoting Anderson v. Liberty Lobby, Inc., ________________________________ 477 U.S. 242, 247-48 (1986)). Material facts are those that have the potential to affect the outcome of a suit. J. Geils ________ Band, 76 F.3d at 1250-51. Disputes as to the existence of ____ material facts are genuine if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Morrissey, 54 F.3d at 30 (quoting Anderson, 477 _________ ________ U.S. at 247-48). We must affirm the district court's grant of summary judgment "[i]f the evidence [presented by RPM] is merely colorable, or is not significantly probative." Id. ___ We apply Massachusetts law.  -10- 10 IV. IV. DISCUSSION DISCUSSION __________ The issue is whether the indemnification clause contained in the lease agreement RPM executed with Dunlop is enforceable and, if so, whether its scope includes liability for damages stemming from the injuries MacGlashing sustained as a result of the accident. RPM avers that it is not obligated, under Massachusetts law, to pay the judgment awarded the MacGlashings because Dunlop materially breached the lease agreement, relieving RPM of the promise to indemnify Dunlop contained in the agreement. In the alternative, RPM argues that even if the indemnification clause is valid, it should not be deemed responsible for the particular claims advanced by the MacGlashings because they fall outside the contemplated scope of the agreement.  Appellees contest both of these arguments. We begin by addressing the enforceability of the lease agreement and then turn to a discussion of its scope. Enforceability of the Lease Agreement's Enforceability of the Lease Agreement's _______________________________________ Indemnification Clause Indemnification Clause ______________________ RPM challenges the enforceability of the indemnification clause by attacking the validity of the lease agreement it executed with Dunlop. See Kelly v. Dimeo, Inc., ___ ____________________ 31 Mass. App. Ct. 626, 628 (1991)("Under Massachusetts law, a contract-based right to indemnification exists only if there is a binding contract between indemnitor and indemnitee in -11- 11 which such right is expressed or from which it can be fairly implied."), review denied, 412 Mass. 1102 (1992). RPM, using ______ ______ the Uniform Commercial Code as its launching pad, argues that the indemnification clause is unenforceable because Dunlop materially breached implied warranties of merchantability, see Mass. Gen. L. ch. 106, 2-314 (1990), and fitness for a ___ particular purpose, see Mass. Gen. L. ch. 106, 2-315 ___ (1990), by providing RPM with work platforms that were defective and unreasonably dangerous. RPM asserts that because, under Massachusetts law, the MacGlashings would not have been entitled to any recovery in the absence of a finding that the work platform Dunlop provided was defective or unreasonably dangerous, Dunlop, ipso facto, breached the __________ implied warranties of merchantability and fitness for a particular purpose.  RPM, in effect, attempts to use the tort claim of the MacGlashings against Dunlop as a basis for its argument that Dunlop breached its implied warranty of merchantability. But the contract between RPM and Dunlop was for the lease of property. RPM cannot use the indemnity clause to turn an economic contract into one based on tort concepts. Massachusetts law plainly forecloses RPM's argument. It adopts the majority view which draws a clear distinction between tort recovery for physical injury and contract recovery for economic loss. See Jacobs v. Yamaha ___ _________________ -12- 12 Motor Corp., 420 Mass. 323, 329 n.5 (1995); Bay State-Spray & ___________ _________________ Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. __________________________________________________ 103, 107 (1989); Colter v. Barber-Greene Co., 403 Mass. 50 ____________________________ (1988); Correia v. Firestone Tire & Rubber Co., 388 Mass. ________________________________________ 342, 356 (1983); Marcil v. John Deere Indus. Equip. Co., 9 ________________________________________ Mass. App. Ct. 625, 630 (1980); see also Canal Elec. Co. v. ___ ____ ___________________ Westinghouse Elec. Co., 973 F.2d 988, 996 (1st Cir. 1992); ______________________ Reibold v. Simon Aerials, 859 F. Supp. 193, 198 (E.D. Va. _________________________ 1994). The rule that the absence of a showing of personal injury, or of physical damage to property belonging to the contracting party forecloses recovery for economic losses stemming from tort-based strict liability or negligence is well established in Massachusetts. Garweth Corp. v. Boston ________________________ Edison Co., 415 Mass. 303, 305 (1993). Attempts to ___________ circumvent this rule by "[c]ouching the allegations in terms of breach of contract" have been rejected routinely. See, ___ e.g., FMR Corp. v. Boston Edison Co., 415 Mass. 393, 394 ____ ________________________________ (1993). We cannot, as RPM urges, regard the difference between tort and contract-based claims as "irrelevant" in this case. RPM's attempt to shift the obligation to compensate the MacGlashings back to Dunlop fails because RPM alleges no direct damage or injury to itself. The argument that RPM is entitled to relief from the contract it negotiated with Dunlop hinges entirely on the physical injury its employee, Charles MacGlashing, sustained. Compare _______ -13- 13 Garweth, 415 Mass. at 307. RPM has not made the showing of _______ injury or damage to itself as Massachusetts law requires. Moreover, appellant has not convinced us that the alleged breach of the lease agreement rendered the indemnification clause invalid, as if it had never been executed. The one-page contract executed between RPM and Dunlop contains standard-form language and clauses which suggest that the indemnity provision is separate from the underlying lease. The face of the agreement sets out, inter _____ alia, the type and cost of the equipment to be leased, as ____ well as guidelines for its installation and transportation around the site, and expressly incorporates a July 21, 1993, handwritten note regarding delivery, assembly, and pickup of the work platforms by Paul Haven, RPM's president.  The reverse side of the agreement contains seventeen numbered paragraphs that outline lease conditions and are clearly separated by spacing. Two of these reverse- side clauses concern responsibility for damages flowing from the use of equipment referred to in the lease agreement. The first clause provides that RPM assumes full responsibility under the agreement for damages, injuries, and accidents caused by the use of Dunlop equipment and reads:  3. Lessee assumes the full responsibility for damages, injuries and accidents resulting to any property or persons, caused by the use of said equipment while in the possession of the lessee, from the time of arrival at the -14- 14 above named location, during the term of lease, and until equipment is returned to lessor. The second clause deals with indemnification and is one of six written in boldfaced type. It provides that RPM absolves Dunlop of any responsibility or obligation in the event of accidents resulting from the use of the leased equipment, regardless of cause or consequence and reads: 12. THE LESSEE HEREBY ABSOLVES THE LESSOR OF ANY RESPONSIBILITY OR OBLIGATION IN THE EVENT OF ACCIDENT, REGARDLESS OF CAUSES OR CONSEQUENCES, AND THAT ANY COSTS, CLAIMS, COURT OR ATTORNEY'S FEES, OR LIABILITY RESULTING FROM THE USE OF DESCRIBED EQUIPMENT WILL BE INDEMNIFIED BY THE LESSEE REGARDLESS AGAINST WHOM THE CLAIMANT OR CLAIMANTS INSTITUTE ACTION. The standard form equipment sign-off sheets Paul Haven signed on the 20th, 22nd, 23rd, and 27th of July 1993, when Dunlop delivered the work platforms to the work site, contain similar language. They provide that RPM agrees that: "Dunlop, Inc. is not responsible for any damages to the building, or any injuries or accidents resulting to people or property caused from the use or misuse of this equipment." Based on our reading of the lease and the sign-off sheets, we do not think RPM and Dunlop intended the covenants contained in the lease agreement and the indemnification clause to be dependent. See Connolly v. Haines-CE Brook, ___ ______________________________ Inc., 277 Mass. 423, 427 (1931)("[W]hether covenants are ____ conditional is determined . . . by the true intention of the -15- 15 parties as expressed by the language of the contract."); see ___ also 41 Am. Jur. 2d 17, at 358 (1995) ("Where the language ____ of the indemnity contract is neither technical nor ambiguous, the words are given their legal, natural, and ordinary meaning."). Because the right of action on the leased platforms accrues as soon as there is a breach of its terms, -- i.e., failure to deliver the equipment in a timely fashion -- the right of action under the indemnity agreement does not accrue until Dunlop makes payment to a third party or suffers the loss addressed by the agreement. See 41 Am. Jur. 2d 4, ___ at 349 (1995); 42 C.J.S. 2, at 72-73 (1991); see also ___ ____ Restatement (Second) of Contracts 379, comment a. We agree with the district court that the better and more logical approach is to treat the indemnification clause as an independent provision of the lease. See Chatlos Sys., Inc. ___ __________________ v. Nat'l Cash Register Corp., 635 F.2d 1081, 1085 (3d Cir. _____________________________ 1980).  There is solid precedent for our decision to treat the indemnification clause as a separate agreement unaffected by any breach of the lease contract. See, e.g., Hill Constr. ___ ____ ____________ Corp. v. American Airlines, Inc., 996 F.2d 1315 (1st Cir. __________________________________ 1993)(carrier cargo liability limitations survive breach of the agreement to carry cargo); County of Middlesex v. Gewvyn _____________________________ Constr. Corp., 450 F.2d 53 (1st Cir. 1971), cert. denied, 405 _____________ _____ ______ U.S. 955 (1972) (arbitration agreement valid despite -16- 16 construction contract breach). The Supreme Judicial Court of Massachusetts addressed the question of whether breach of a contract undermines a consensual allocation of risk in Canal _____ Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369 (1990). _____________________________________ That case involved electric utility companies which sought remedies for breach, under the UCC, for losses they allegedly incurred as the result of the failure of electric generator components supplied by Westinghouse Electric Corporation. They sought to be relieved of the limits on indirect, special, incidental, and consequential damages imposed by the selling policies to which they agreed. Id. at 371. The ___ Supreme Judicial Court held that the liability limitations were enforceable even though Westinghouse's efforts to cure the problems created by its generator components were unsuccessful. Id. at 374-75.  ___ This holding persuades us that the course we adopt in this case would be followed by the Massachusetts courts. Under Massachusetts law, the allocation of risk through contractual agreements neither conflicts with public policy, Canal Elec., 406 Mass. at 372; Minassian v. Ogden Suffolk ___________ ____________________________ Downs, Inc., 400 Mass. 490, 493 (1987), nor the Massachusetts ___________ workers' compensation statute prohibition against an employee receiving direct compensation for work-related injuries from its employer. See Decker v. Black and Decker Mfg. Co., 389 ___ _____________________________________ Mass. 35, 38 (1983); Whittle v. Pagani Bros. Constr. Co., 383 ___________________________________ -17- 17 Mass. 796, 800 (1981); see also Mass. Gen. L. ch. 152, 23 ___ ____ (1988); Clarke v. Kentucky Fried Chicken of California, Inc., _____________________________________________________ 57 F.3d 21, 24 (1st Cir. 1995)(describing provisions of workers' compensation statute). This is especially true where, as in this case, the parties to the agreement allocating risk are "sophisticated business entities." Canal _____ Elec., 406 Mass. at 374; Deerskin Trading Post, Inc. v. _____ ________________________________ Spencer Press, Inc., 398 Mass. 118, 123 (1986). ___________________ Risk allocation agreements are common in the construction industry and are widely-regarded as a "reasonable accommodation" between parties to a commercial agreement. See Canal Elec., 406 Mass. at 374; Jones v. Vappi ___ ___________ ______________ Co., 28 Mass. App. Ct. 77 (1989); see also Debra A. Perelman, ___ ___ ____ Risk Allocation Through Indemnity Obligations In Constr. _____________________________________________________________ Contracts, 40 S.C. Law. Rev. 989, 989-90 (1989). They have _________ the advantage of allowing owners, contractors, and subcontractors to shift the significant and, oftentimes, unforeseeable risks inherent in construction work. Cf. Hill ___ ____ Constr., 996 F.2d at 1317; Perelman, Risk Allocation, 40 S.C. _______ _______________ Law. Rev. at 989-90. They also permit the equipment needed to complete construction jobs to be obtained at lower rates because the lessors of such equipment can exclude the cost of insuring against accident-related damages from the equipment price. Cf. Hill Constr., 966 F.2d at 1317. In Shea v. Bay ___ _____________ ___________ State Gas Co., 383 Mass. 218, 224 (1981), the Supreme _______________ -18- 18 Judicial Court candidly recognized that "realistically viewed, the shift of liability is a shift in the burden of providing adequate insurance coverage."  Nothing in the record suggests that Dunlop acted in bad faith, see Mass. Gen. L. ch. 106 1-203 (1990), Hill ___ ____ Constr., 996 F.2d at 1317, or unfairly seeks to bind RPM to _______ an indemnity clause which was hidden or buried deep in the contract. Compare Mobil Chemical Co. v. Blount Bros. Corp., _______ _________________________________________ 809 F.2d 1175, 1182 (5th Cir. 1987). Paragraph 12 shifts liability to RPM in clear and unmistakable language. Additionally, the record makes it clear that RPM's president, Paul Haven, a man with more than twenty years of experience in the construction industry, knew or should have known about the risk allocation provisions contained in the agreement. He negotiated the lease agreement and represented, in signing it on RPM's behalf, that he had "read and agree[d] to all terms stated on both sides of th[e] form." By Haven's own acknowledgement indemnity clauses of the sort contained in the Dunlop lease agreement are standard in the construction industry. Cf. Perelman, Risk Allocation, 40 S.C. Law. Rev. ___ _______________ at 989-90 (Indemnity provisions in construction contracts should be interpreted by "recognizing the intent of the parties entering into the agreement."). We, therefore, conclude that the indemnity clause contained in the lease agreement RPM executed with Dunlop is enforceable. -19- 19 Scope of the Indemnification Clause  Scope of the Indemnification Clause  ____________________________________ Under Massachusetts Law Under Massachusetts Law _______________________ In addition to attacking the enforceability of the indemnity clause, RPM attacks its scope. It argues that, under Massachusetts law, the term "use" contained in paragraph 12 of the agreement cannot be read to include liability for claims brought on a theory of strict liability instead of negligence. See Hayes v. Douglas Dynamics, Inc., ___ _______________________________ 8 F.3d 88, 88 n.1 (1st Cir. 1993) ("Under Massachusetts law, the theory of breach of an implied warranty of merchantability is basically the same as strict liability theory in tort."), cert. denied, 114 S. Ct. 2133 (1994).  _____ ______ The rule that indemnity contracts are to be strictly construed against the indemnitee no longer obtains in Massachusetts. See Whittle, 383 Mass. at 797. The modern ___ _______ rule is that "'[c]ontracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished.'" Shea, 383 Mass. at 222 (quoting New York, ____ _________ N.H. & H.R. Co. v. Walworth Co., 340 Mass. 1, 3 (1959). __________________________________ Courts are expected to give effect to the parties' intentions at the time of the agreement and to give them reasonable meaning. Id.; see also Cohen v. Steve's Franchise Co., Inc., ___ ___ ____ ____________________________________ 927 F.2d 26, 28 (1st Cir. 1991); Polaroid, 416 Mass. at 694; ________ Speers v. H.P. Hood, Inc., 22 Mass. App. Ct. 598 (1986), ___________________________ review denied, 398 Mass. 1105 (1986).  ______ ______ -20- 20 We are not impressed by RPM's argument that the indemnity clause's failure to specifically refer to strict liability claims omits such claims from its scope. That the clause also fails to mention claims brought on a theory of negligence undermines the force of RPM's argument significantly because there is little support for the contention that the omission of a specific reference to negligence invalidates an indemnity clause. Massachusetts cases such as Shea, 383 Mass. 219-20, "teac[h] that . . . an ____ indemnity provision may be read to cover situations of [an] indemnitee's negligence although there is no explicit statement to that effect." Speers, 22 Mass. App. Ct. 598, ______ 601. Where the language is broad and the parties' intent relatively clear, responsibility for a risk not expressly mentioned in the indemnity clause may be properly placed with the indemnitor. Cf. Shea, 383 Mass. at 224-25. ___ ____ We have little doubt that the language contained in the indemnity clause is broad enough to encompass claims brought on a theory of either negligence or strict liability. First, we do not agree with RPM that private agreements allocating the risk of strict liability for tort damages in the circumstances presented here thwart public policy. Such agreements are reasonable accommodations in the construction industry context. Second, the language contained in paragraph 12 of the lease agreement is broad and expansive. -21- 21 It absolves Dunlop for "any responsibility or obligation" in the event of an accident, "regardless of cause or consequences," stemming from the use of its equipment.  Similar language has been found sufficient to encompass indemnification obligations on claims brought on a theory of strict liability. See Beloit Power Sys., Inc. v. ___ ___________________________ Hess Oil Virgin Islands Corp., 757 F.2d 1427, 1428 (3d Cir. ______________________________ 1985) ("agrees to indemnify and hold harmless seller from all claims by third parties which extend beyond the foregoing limitations on seller's liability"); Midland Ins. Co. v. _____________________ Delta Lines, Inc., 530 F. Supp. 190 (1982)("all loss lessor . _________________ . . may sustain or suffer because of . . . the use of the equipment."); Mid-America Sprayers, Inc. v. U.S. Fire Ins. _______________________________________________ Co., 8 Kan. App. 2d 451, 454 (1983)("any responsibility or ___ obligation . . . resulting from the use of described equipment"); see also Berry v. V. Ponte & Sons, 166 N.J. ___ ____ __________________________ Super. 513, 517, cert. denied, 81 N.J. 271 (1979). In Cohen ____________ _____ v. Steve's Franchise Co., Inc., 927 F.2d 26, 29 (1st Cir. _______________________________ 1991), we interpreted a franchise agreement executed under Massachusetts law and held that the language contained in an indemnity clause was broad enough to cover both negligent and nonnegligent business decisions. The clause required the franchisor to indemnify Steve's Ice Cream, Inc. "for any liability arising 'by reason of an act or omission with -22- 22 respect to the business or operation of the STEVE'S ICE CREAM STORE . . . .'" Id. at 29.  ___ In Polaroid Corp. v. Rollins Envtl. Serv. (NJ), _______________________________________________ Inc., 416 Mass. 684 (1993), the Supreme Judicial Court held ____ that an indemnity clause encompassed claims for strict liability, even though it did not explicitly provide for it. Polaroid involved an indemnity clause for liability and loss ________ "for release or a substantial threat of release of hazardous substances." Id. at 686. The plaintiffs in the case sought ___ a determination that the hazardous waste transporter with whom they executed the contracts containing the indemnification clauses, Rollins Environmental Services (NJ), Inc., was obligated to indemnify them against claims arising from a spill at a hazardous waste storage facility. The language contained in the indemnity clause read in relevant part: "You hereby agree to indemnify and save Polaroid harmless from all liability and loss arising from services performed by you or your employees hereunder . . . ." After concluding that the private indemnity agreements were not prohibited by CERCLA, 42 U.S.C. 9607(e)(1), the court held that the clause was broad enough to cover strict liability for hazardous waste damage imposed under CERCLA. In reaching this conclusion, the court found that strict liability in tort for ultrahazardous activities existed in Massachusetts at the time the parties entered into their agreements and -23- 23 that there was no outward manifestation on the part of the indemnitor to limit its obligations under the agreement to negligence.  Moreover, paragraph 14 of the lease convinces us that the parties intended the indemnity agreement to cover all liability whether grounded in negligence or strict liability. Paragraph 14 provides, in relevant part, "Our insurance [Dunlop's] does not cover the equipment while in your possession [RPM's]." It can be reasonably inferred from this that the parties intended RPM to procure insurance to cover the burden it assumed under the indemnity clause. Cf. ___ Speers, 22 Mass. App. Ct. at 601; see also Cohen, 927 F.2d at ______ ___ ____ _____ 29. That RPM carried $5 million in liability insurance, whereas Dunlop carried only $1 million supports this contention. See Midland Insurance, 530 F. Supp. at 194 ___ __________________ (broad language of agreement and existence of increased insurance is evidence of obligation to indemnify). RPM gave no indication that it intended to indemnify for negligence liability only. See Polaroid, 416 Mass. at 694 ("[A] ___ ________ contracting party's objective intention dictates and a party is bound by its outward manifestations to the other party."). RPM cannot escape its obligations under the indemnity clause.  RPM's contention that the indemnity clause is not conspicuous and cannot shift liability for defective -24- 24 equipment does not deserve extended comment. The clause is printed in capital letters. Its language is neither ambiguous nor confusing. The president of RPM testified that he read it and understood it. At oral argument counsel for RPM agreed that the lease was not a contract of adhesion. We end our analysis by noting that at the hearing on the proposed settlement between the MacGlashings and Dunlop, counsel for RPM expressly approved the structure of the settlement and stated that it was fair and equitable. V. V. The judgments of the district court are affirmed. The judgments of the district court are affirmed. ___________________________________________________ There will be added to the judgment amounts of $4,651,739.23 There will be added to the judgment amounts of $4,651,739.23 _____________________________________________________________ and $306,032.52 such additional post-judgment interest as is and $306,032.52 such additional post-judgment interest as is _____________________________________________________________ due. due. ____ Costs on appeal awarded to appellees. Costs on appeal awarded to appellees. _____________________________________ -25- 25