THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY *vs.* WALWORTH COMPANY.

Suffolk. October 6, 1959. — December 7, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Contract,* Of indemnity, Railroad for private use, Construction. *Railroad,* Railroad for private use.

In a contract between a railroad company and a proprietor of premises wherein the company agreed to construct and operate an "industrial track" on public ways for private use "in the transportation of freight" from the company's main line to the proprietor's premises and the words "track" and "railroad" were used interchangeably, a provision of the contract, that "the Proprietor agrees to indemnify the Railroad Company for and hold it harmless from any claim or any expense arising from: . . . Any . . . loss, damage or injury to person or property on said private railroad . . . by reason of said tracks . . . or the construction, maintenance and operation thereof, except such as arise solely from the gross negligence of the Railroad Company," was not confined to coverage of claims respecting the metal tracks but embraced the entire private railroad operation, and the proprietor was obligated to indemnify the company for an amount it paid in satisfaction of a judgment, based on ordinary negligence on its part, obtained against it by the operator of a taxicab injured in a collision with a locomotive standing on a public way. [5-6]

A provision of a contract between the proprietor of certain premises and a railroad company which constructed a freight railroad for private use on public ways leading to the proprietor's premises, that the company would "operate said private railroad in accordance with all laws existing or hereafter in force, and with all orders and directions of all public boards or tribunals now or from time to time hereafter having authority in the premises," referred broadly to the method of operation of the private railroad in accordance with, among other things, the statutes relating to such railroads and did not derogate from the coverage of another provision whereby the proprietor agreed to indemnify the company for liability for loss, damage or injury to others arising out of the operation of the private railroad and not caused by gross negligence of the company, and the proprietor was obligated to indemnify the company for liability, based on ordinary negligence on its part, for personal injuries arising from a collision between a taxicab and a locomotive standing on a public way without lights at night in violation of G. L. (Ter. Ed.) c. 85, § 15.  [6–7]

CONTRACT.  Writ in the Superior Court dated January 7, 1953.

The action was reported by *Kirk*, J.

*Noel W. Deering*, for the plaintiff.

*Philander S. Ratzkoff*, for the defendant.

WILKINS, C.J.  This action of contract upon the indemnity provisions of an agreement relating to a private railroad track for freight transportation has been reported without decision by a judge of the Superior Court.  G. L. (Ter. Ed.) c. 231, § 111.

The facts are agreed.  The contract, dated August 16, 1915, between the plaintiff and Walworth Manufacturing Company, has become an obligation of the defendant. On April 9, 1945, a taxicab of one Hoban was in collision with a locomotive upon the private track.  He brought an action of tort which resulted in a verdict, and later a judgment, in his favor against the trustees of the plaintiff. *Hoban* v. *Trustees of N. Y., N. H. & H. R.R.* 326 Mass. 566. The verdict was not based on gross negligence of the plaintiff or its trustees.  The defendant refused to defend the action or to pay the judgment.  Reorganization proceedings of the plaintiff terminated before execution issued, and the plaintiff was obliged to pay, and did pay, $14,865.65 in satisfaction of the judgment.

In the preamble of the contract the defendant's predecessor (Walworth) is referred to as "Proprietor." The recitals are that Walworth "and certain other individuals, firms and corporations located in the South Boston District . . . are desirous of building an industrial track for the private use in the transportation of freight" from the main line of the railroad; that "the Proprietor has obtained the necessary statutory authority from all public boards and tribunals for the construction and operation of a railroad for private use in the transportation of freight across or upon C Street, West First Street and East First Street . . . to connect the location and tracks of the Railroad Company with private tracks upon the property or properties of parties adjoining said streets"; and that "it is deemed for the best interests of all parties that said railroad for private use shall, when completed, be operated by the Railway Company."

"Contracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." *Century Indem. Co.* v. *Bloom*, 325 Mass. 52, 56, and cases cited. "[W]e must construe the contract with reference to the situation of the parties when they made it and to the objects sought to be accomplished." *Bryne* v. *Gloucester*, 297 Mass. 156, 158. There is no general principle that contracts of indemnity are not favored in law, nor any such implication in *Laskowski* v. *Manning*, 325 Mass. 393, 398–399.

The contract, read as a whole, expresses a desire on the part of the proprietor and its associates for the installation of a track and the operation of a freight railroad on public ways in Boston to connect with tracks on their respective properties. The installation and operation of a railroad on the public streets are patently a more dangerous undertaking than are the same activities on private property or on a railroad right of way. As the project was not within the field of the plaintiff's public duty (*New York Cent. R.R.* v. *William Culkeen & Sons Co.* 249 Mass. 71, 75–76), the

plaintiff was able to install and operate the railroad on terms which in 1915 the proprietor, no doubt, readily signed. Now many years later, after this accident, the defendant has been able to discover and suggest reasons why the indemnity should not apply.

One objection is that paragraph Ninth (c) covers only the maintenance and operation of tracks and has nothing to do with the operation of rolling stock on the tracks. This paragraph reads, "Ninth: The Proprietor agrees to indemnify the Railroad Company for and hold it harmless from any claim or any expense arising from: . . . (c) Any other loss, damage or injury to person or property on said private railroad or extension thereof, or the premises adjacent thereto, by reason of said tracks or the extension thereof, or the construction, maintenance and operation thereof, except such as arise solely from the gross negligence of the Railroad Company or its agents and servants."

The language of the contract was not chosen with the greatest care. Several phrases, italicized for emphasis in the following quotations, are used, we think, with intent to refer interchangeably to the same thing. The preamble, as we have seen, mentions "building an *industrial track for the private use*," "construction and operation of a *railroad for private use*," and "*railroad for private use*[1] . . . operated by the Railway Company." In paragraph First we read: "the Railroad Company shall construct and when completed shall operate *said industrial track* . . . and shall in the construction and operation of *said railroad* be subject and entitled . . .." In paragraph Third the proprietor appointed the railroad company "its sole agent to construct, complete and operate *said private railroad* and in such construction and operation to enter upon, use and operate the same with cars and engines for the transportation of freight, it being the in-

---

[1] The construction of "a railroad for private use" in the transportation of freight is presently regulated by G. L. c. 160, § 245, as amended through St. 1941, c. 496, § 2, which springs from St. 1871, c. 232. It has existed in very much the same form down to the present time. St. 1874, c. 372, §§ 175, 176. Pub. Sts. c. 112, §§ 223, 224. R. L. c. 111, § 279. St. 1906, c. 463, Part II, §§ 251, 258.

tention of this agreement to secure to the Railroad Company the control, subject to the terms of this indenture, of the maintenance and operation *of said private railroad* and of the right to lay tracks . . .." In paragraph Sixth "The Proprietor agrees to maintain and keep *said private railroad* in proper condition for the safe and efficient handling of cars thereon," "to pay all taxes and assessments on *said private railroad* and other property and rights in, on, or connected with *said private railroad,*" and to pay a great variety of other expenses. In paragraph Twelfth, it is provided: "The Proprietor may after the *private railroad* has been constructed and is ready for operation, designate in writing some one to act as the agent of the Proprietor and of the subscribers to *said private railroad,* but such designation shall not relieve the Proprietor or the subscribers to *said track* of the duties and liabilities imposed by this agreement. This last reference to "subscribers to said track," we think, is particularly significant, and ends the contract on the same note with which the preamble began, "building an industrial track."

We are of opinion that the indemnity in paragraph Ninth (c) against loss, damage or injury on "said private railroad . . . by reason of said tracks . . . or the construction, maintenance and operation thereof" is not confined to the metal tracks, but embraces the entire railroad operation. In other words, the indemnity covers negligence, but not gross negligence, in the railroad operation. Our opinion is not unfavorably affected by the fact that paragraph Ninth (a) indemnifies against loss by reason of the refusal of anyone to permit the removal of track metal or "by reason of any imperfection or invalidity in any franchise, license or permit *relating to said track*"; or that paragraph Ninth (b) indemnifies against any loss or damage by fire "whether caused by negligence of the Railroad Company or otherwise, communicated directly or indirectly by or from locomotive engines *upon said private railroad*" (italics supplied). We are aware that a contract will not be construed as indemnifying one against his own negligence or that of his employees unless express language unequivocally so requires. *Boston & Maine R.R.*

v. *T. Stuart & Son Co.* 236 Mass. 98, 104. *Farrell* v. *Eastern Bridge & Structural Co.* 291 Mass. 323. *Laskowski* v. *Manning,* 325 Mass. 393, 398–399. This test is met by the language of the contract excluding liability for gross negligence of the railroad company, which is a simultaneous inclusion of liability for ordinary negligence.

Another objection made by the defendant is that the opinion in the *Hoban* case shows that the evidence of negligence which made a case for the jury was that the locomotive was standing on a public way without lights during the period from one half an hour after sunset to one half an hour before sunrise in violation of G. L. (Ter. Ed.) c. 85, § 15. The contention is that "the defendant is under no obligation to indemnify the plaintiff against the tort liability of the plaintiff having its genesis solely in a violation of law in circumstances where the defendant did not participate in any way in the wrong." We are referred to paragraph Seventh, which provides: "The Railroad Company agrees with the Proprietor that it will construct and complete as aforesaid said private railroad and will operate said private railroad in accordance with all laws existing or hereafter in force, and with all orders and directions of all public boards or tribunals now or from time to time hereafter having authority in the premises." It is argued that this provision must embrace G. L. (Ter. Ed.) c. 85, § 15. We note that the penalty for violation is "a fine of not more than five dollars." G. L. (Ter. Ed.) c. 85, § 17. It seems to us that paragraph Seventh is aimed broadly at method of operation, and is not meant to run counter in individual cases to the general effect of the later provisions of paragraph Ninth (c). By method of operation we have in mind, but not exclusively, the statutory provisions relating to railroads for private use. In 1915 the effective statute, St. 1906, c. 463, Part II, § 251, read, in part: "A person or corporation may construct a railroad for private use in the transportation of freight; but shall not take or use lands or other property therefor without the consent of the owner thereof. No such railroad shall be connected with the rail-

road of another corporation without its consent; nor shall it be constructed across or upon a highway, town way or travelled place without the consent of the board of aldermen of the city or selectmen of the town, nor except in a place and manner approved by them. If the board of aldermen or selectmen consent, they shall from time to time make such regulations relative to motive power, rate of speed, and time and manner of using the railroad over and upon such way or travelled place, as in their judgment the public safety and convenience require, and they may order such changes to be made in the track as are rendered necessary by the alteration or repair of such way."

As we read the contract, paragraph Seventh does not derogate from the coverage of paragraph Ninth (c) in those cases where negligence is based on a finding that there was a violation of some traffic or grade crossing law. In the *Hoban* case, as in the usual tort case, there was conflict in the testimony. It would not be a reasonable interpretation that the parties to this contract, which the preamble declares was entered into to achieve a desire of the proprietor and its associates, excluded from coverage one of the most frequent grounds of liability in railroad operation.

In accordance with the terms of the report, judgment is to be entered for the plaintiff for the amount paid in satisfaction of the judgment in *Hoban* v. *Trustees of N. Y., N. H. & H. R.R.* 326 Mass. 566, together with interest from the date of payment.

*So ordered.*