JAMES KELLY & others *vs.* DIMEO, INC.; THE
WATERPROOFING COMPANY, third-party defendant.

No. 89-P-1343.

Middlesex. September 19, 1991. - December 6, 1991.

Present: BROWN, DREBEN, & GREENBERG, JJ.

*Contract*, Indemnity. *Indemnity. Interest.*

A general contractor was entitled to indemnification by its subcontractor
for the general contractor's payment of a claim for injuries received by
the subcontractor's employee on account of the general contractor's
negligence, where the subcontract contained an express agreement by
the subcontractor to indemnify the general contractor for all claims
caused in whole or in part by the negligence of the subcontractor's em-
ployees and where the injuries of the employee in question were caused
in part by his own negligence. [627-630]

The judge in a civil action correctly determined that the appropriate date
from which prejudgment interest under G. L. c. 231, § 6C, was to be
calculated in a judgment based on a contract of indemnification was the
date when one party paid a settlement that the other party refused to
indemnify [630-631], and he correctly determined that the rate of in-
terest was set at eleven percent by the terms of the contract [631-632].

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 27, 1982.

The case was tried before *Robert J. Hallisey*, J., and a
third-party claim for indemnification was heard by him.

*Owen Gallagher* for Dimeo, Inc.

*Jerry E. Benezra* (*David A. Hilton* with him) for The Wa-
terproofing Company.

GREENBERG, J. We are presented with a case which asks
whether a subcontract provision between the defendant, The
Waterproofing Company (Waterproofing), and its general
contractor, Dimeo, Inc. (Dimeo), requires Waterproofing to
indemnify Dimeo for the latter's payment of an injury claim
by Waterproofing's employee. A Superior Court judge al-

lowed Dimeo's claim for indemnification under the agreement. We affirm.

The facts are not in dispute. On November 14, 1981, James Kelly, an employee of Waterproofing,[1] fell off a ladder and was seriously injured while working on a project at the Carney Hospital. Kelly, as well as his wife and children, sued Dimeo for damages, claiming that the injuries were caused by the general contractor's negligence. Dimeo filed a third-party complaint against Waterproofing, seeking enforcement of the indemnification provisions of its subcontract. The underlying case was tried to a jury, the parties having agreed to bifurcate the third-party indemnification action for a subsequent jury-waived trial. The jury determined that Dimeo was ninety percent negligent and that Kelly was ten percent negligent and that their combined negligence caused the accident. In response to subsequent special questions, the jury determined that Waterproofing was not negligent. Following this, a judgment was entered in favor of Dimeo on its third-party complaint for indemnification, and Waterproofing was ordered to reimburse Dimeo with interest for the full amount to be paid to the Kellys. Waterproofing's appeal followed.

1. *Waterproofing's challenge.* The subcontract made use of "General Conditions" published by the American Institute of Architects and essentially included the standard express indemnity clause set forth in *Shea* v. *Bay State Gas Co.*, 383 Mass. 218, 224 n.9 (1981).[2] Dimeo asserts no claim for in-

---

[1]Kelly was also employed by Dimeo. On the day of the accident, however, he was compensated by Waterproofing as an on-site labor steward pursuant to the governing union contract, and Waterproofing admits that he was working as its employee.

[2]The express indemnity clause stated, in pertinent part, "The Subcontractor shall indemnify and hold harmless the General Contractor and all of his agents and employees from and against *all claims*, damages, losses and expenses including attorney's fees arising out of or resulting from the performance of the Subcontractor's Work under this subcontract, provided that any such claim, damage, loss or expense (a) is attributable to bodily in[j]ury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom and (b) *is caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether*

demnification based on any statutory or common law theory. Cf. *Liberty Mut. Ins. Co.* v. *Westerlind*, 374 Mass. 524, 526-527 (1978). It relies wholly on its claim of an express contract of indemnity. Under Massachusetts law, a contract-based right to indemnification exists only if there is a binding contract between indemnitor and indemnitee in which such right is expressed or from which it can be fairly implied. *H.P. Hood & Sons, Inc.* v. *Ford Motor Co.*, 370 Mass. 69, 77 (1976). As a caveat, however, a party may not obtain indemnification for its own negligence under a theory of implied contractual indemnity. *Great Atl. & Pac. Tea Co.* v. *Yanofsky*, 380 Mass. 326, 334 (1980). *Rathbun* v. *Western Mass. Elec. Co.*, 395 Mass. 361, 363 (1985).

The trial judge found that Waterproofing's express agreement to indemnify Dimeo for the negligent acts of Waterproofing's employees, against "all claims," was sufficiently broad to encompass the Kellys' claims. The judge rejected Waterproofing's argument that the indemnity provision was inapplicable in this unusual situation, in which Waterproofing's "negligence" was merely imputed by Kelly's acts and not based on its own acts or omissions. Waterproofing, in essence, argues that it was unfair that it alone should shoulder the responsibility for Kelly's injuries when his own and Dimeo's negligence were deemed to be the causes of the accident. Waterproofing's challenge to this judgment is twofold. First, it contends that the wording of the indemnity provision is ambiguous as applied here, unlike the situation in *Shea* v. *Bay State Co.*, *supra*. Waterproofing asserts that there is no language which "is reasonably clear" to demonstrate that the indemnification provision is implicated without a finding of some wrongdoing on its part. Secondly, Waterproofing asks us to interpret the indemnity provision to apply only in a situation in which its employee is exclusively at fault, so as to prevent shifting the burden from a negligent party, Dimeo, to one who bears no fault.

---

*it is caused in part by a party indemnified hereunder*" (emphasis supplied).

2. *Plain meaning of the contractual indemnity clause.*
Waterproofing's position on both points flouts the express
language of the indemnity clause. The third-party action
against Waterproofing proceeded on the assumption that
Waterproofing agreed to "indemnify and hold harmless
[Dimeo] against all claims . . . arising out of [Waterproof-
ing's] work under this subcontract, provided that any such
claim . . . is attributable to bodily injury . . . and . . . is
caused in whole *or in part* by any negligent act or omission"
of its employee. We begin with the principle that this provi-
sion should be construed in accordance with its ordinary and
plain meaning. *deFreitas* v. *Cote*, 342 Mass. 474, 477
(1961). See also *Edwin R. Sage Co.* v. *Foley*, 12 Mass. App.
Ct. 20, 28 (1981). This type of indemnification clause is valid
and enforceable — even where the indemnitee is found to be
"concurrently" negligent and where the indemnitor is free
from any negligence. See, e.g., *Whittle* v. *Pagani Bros. Con-
str. Co.*, 383 Mass. 796, 797-799 (1981) (construing lan-
guage virtually identical to that in the instant case); *Jones* v.
*Vappi & Co.*, 28 Mass. App. Ct. 77 (1989). It is well estab-
lished that the express indemnity clause like the one in this
case rescues the indemnitee from paying damages, even when
it is negligent, see *Speers* v. *H.P. Hood, Inc.*, 22 Mass App.
Ct. 598, 602 (1986), and cases cited, and it is not "necessary
that an indemnity clause state expressly that it covers the
indemnitee's negligence." *Aho* v. *Blanchette*, 18 Mass. App.
Ct. 149, 152 (1984).

Waterproofing contends that it is obliged to pay damages
for the negligence of another and "is compelled to defend no
misfeasance of [its] own." *Ford* v. *Flaherty*, 364 Mass. 382,
385 (1973). Since the jury found no active negligence on
Waterproofing's part, the argument goes, it would be inequi-
table to allocate the active party's (Dimeo's) risk of loss to it.
However, as has been pointed out, "[t]he 'active-passive' test
to determine when indemnification will be allowed . . . has
in practice proven elusive and difficult of fair application."

*Dale* v. *Dow Chem. Co.*, 30 N.Y.2d 143, 147 (1972).[3] Where commercial entities have negotiated on a level playing field before entering their contractual arrangements, it is not necessary to explore the theoretical underpinnings of the indemnity doctrine in order to sustain the action of the trial judge. Rather, we believe that Waterproofing expressly agreed to increased liability exposure and that the policy concerns discussed in some earlier decisions developing equitable theories of indemnification, see, e.g., *Pittsley* v. *Allen*, 297 Mass. 83 (1937); *Karcher* v. *Burbank*, 303 Mass. 303 (1939); *Barry* v. *Keeler*, 322 Mass. 114 (1947), do not control this case. Here, Waterproofing expressly agreed (perhaps in an effort to advance its business interests in the competitive arena of the construction industry) to underwrite fully the conduct of its "employees" regardless of the degree of fault attributable to it; it should not be allowed to escape what it knowingly bargained for. "Agreements voluntarily made . . . are not to be lightly set aside on the ground of public policy or because as events have turned it may be unfortunate for one party." *Crimmins & Pierce Co.* v. *Kidder Peabody Acceptance Corp.*, 282 Mass. 367, 379 (1933).

3. *The calculation of interest.* In its cross-appeal Dimeo presents a question regarding the appropriate way to calculate prejudgment interest under G. L. c. 231, § 6C, as amended through St. 1982, c. 183, § 3. The statute, in pertinent part, provides, "In all actions based on contractual obligations . . . interest shall be added by the clerk of court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum, from the *date of the breach or demand*." Here, the judge assessed interest not "from the date of the breach," as Dimeo claims should have been done, but from the date of its payment of the settlement

---

[3]It has been argued that the distinction between active and passive negligence is "artificial" and that the indemnity doctrine "evolved in the unnatural surroundings of an inflexible rule against contribution, and consequently was overextended as a device for reallocating loss." Note, Toward a Workable Rule of Contribution in the Federal Courts, 65 Colum. L. Rev. 123, 126 (1965).

money to the Kellys.[4] The judge explained in his memorandum of decision that "Dimeo . . . was not deprived of the use of any of its monies until it paid the plaintiffs the agreed . . . settlement on June 9, 1988." We agree. In fact, the breach (which Dimeo argues is July 8, 1985, when Waterproofing announced in its answer to the third-party complaint that it chose to contest the issue) did not occur until Dimeo paid the settlement and Waterproofing refused indemnity. Any other interpretation would defeat the statutory purpose of making Dimeo whole for the use of its funds. *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 (1986). The primary purpose of the statute is to "compensate a damaged party for the loss of use or unlawful detention of money." *Perkins Sch. for the Blind* v. *Rate Setting Commn.*, 383 Mass. 825, 835 (1981). See also *Liberty Mut. Ins. Co.* v. *Continental Cas. Co.*, 771 F.2d 579, 584 (1st Cir. 1985) (interest computed against the defendant not from the date of its refusal to defend the plaintiff in the underlying action but from the date when the plaintiff actually paid his private attorney's fees).

Lastly, we note that the contract between Waterproofing and Dimeo fails to delineate what rate of interest should be used in the calculation. The agreement is not, however, altogether wanting, as Dimeo argues. As the judge noted in his memorandum, the contract provided that interest on "payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate of two percent . . . above the then current prime commercial (big business) rate as established by the First National Bank of Boston." The parties do not contest the judge's findings that "[o]n June 9, 1988, the date when the settlement was paid in the underlying action, the prime commercial rate as established by the First National Bank of Boston was 9%." The

---

[4]Although the jury awarded compensatory damages to Kelly in the amount of $2,700,000 and a combined total of $230,000 to his wife and children on their consortium claims, the Kellys' postverdict settlement with Dimeo was in the amount of $1,122,530.

judge correctly computed the rate at eleven per cent per annum.

*Judgment affirmed.*