**Robert LAIHO, Plaintiff**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant and Third Party Plaintiff**

v.

**SPRINGFIELD INDUSTRIAL CENTER, Third Party Defendant.**

**No. Civ. A. 96–30158–MAP.**

United States District Court, D. Massachusetts.

May 11, 1998.

---

**3.** NJI has not alleged infringement under the    doctrine of equivalency.

Marc H. Goldberg, McClung, Peters & Simon, Albany, NY, for Robert Laiho.

Michael B. Flynn, Brister & Zandrow, LLP, Boston, MA, for Consolidated Rail Corp.

Neva K. Rohan, Robinson, Donovan, Madden & Barry, Springfield, MA, for Springfield Industrial Center.

## ORDER

PONSOR, District Judge.

Upon *de novo* review, the Report and Recommendation is hereby adopted, and the defendant's motion for summary judgment on Count IV of its third party complaint is hereby ALLOWED, as specified by the Magistrate Judge. The clerk will set the case for a status conference. So ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO THIRD PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket no. 23)*

NEIMAN, United States Magistrate Judge.

This matter relates to a complaint filed on August 29, 1996, by Plaintiff Robert Laiho ("Laiho") against his employer, Defendant Consolidated Rail Corporation ("Conrail" or the "Railroad"), alleging personal injuries under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51. Laiho maintains that his injury was caused by the unsafe condition of a railroad bridge handrail locat-

ed in the vicinity of a sidetrack leased to Conrail. Springfield Industrial Center ("Industrial"), the third party defendant, owned and was responsible for maintaining the portion of the sidetrack involved in Laiho's accident.

Pursuant to Fed.R.Civ.P. 56, Conrail, as third party plaintiff, has moved for summary judgment. Conrail seeks a declaration that, pursuant to the terms of an Agreement for Industry Track ("Agreement") between Conrail and Industrial, Industrial must indemnify Conrail for amounts payable as a result of Laiho's injuries. In essence, Conrail asserts that, under the terms of the Agreement, Industrial is bound to indemnify Conrail regardless of either parties' acts or omissions. Conrail's motion for summary judgment has been referred to the court for a report and recommendation pursuant to Rule 3 of the Rules of United States Magistrates in the United States District Court for the District of Massachusetts. 28 U.S.C. § 636(b)(1)(B).

### I. FACTUAL BACKGROUND

The Agreement between Industrial and Conrail was entered into on May 10, 1972. (Def.'s Mem.Supp.Summ.J. (Docket No. 24) Ex. A.) The provisions of the Agreement most applicable to the present matter are Section 8(b)(iv), which governs indemnification, and Section 3, which states that the portion of the sidetrack involved in Laiho's accident and owned by Industrial was "to be maintained, repaired and renewed" at its expense. (Def. Ex. A at 2.) The Agreement was in effect at the time of Laiho's accident in September of 1995.

Six to eight months prior to Laiho's accident, Conrail's district safety chairman, Gene Bressette, observed that a railroad bridge, its handrail and some adjacent tracks were in need of repair. (Def. Ex. E at 16–17.) Bressette reported these observations to Conrail. (Id.) He also conveyed his concerns to Industrial's tenant, Sulco Industries ("Sulco"). (Id. at 18.) Three to four months prior to Laiho's accident, Bressette delivered a "safety form" to Sulco indicating the condition of the railroad bridge, its handrails and adjacent sidetrack. (Id.). As a result, the portion of the sidetrack was taken out of service

temporarily and repaired. Repairs for the railroad bridge and handrails were not completed at that time. (Third Party Def. Mem.Opp.Summ.J. (Docket No. 26) Ex. C at 20–21.)

Bressette observed that the unsafe railroad bridge and handrail were used by Conrail employees and continued to discuss these concerns with his superiors at Conrail. (Id. at 22.) Industrial acknowledges that it did not specifically include the railroad bridge as part of its routine three-month inspection of the adjacent sidetrack. (Third Party Def. Ex. D at 16.) Laiho's accident occurred on September 8, 1995, when he was walking across the bridge and the faulty handrail gave out. (Complaint ¶ 5 (Docket No. 01).)

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); see also Magee v. United States, 121 F.3d 1, 3 (1st Cir.1997). Once the moving party has demonstrated that no genuine issue of material fact exists, the burden is on the opposing party to challenge this by coming "forward with specific provable facts which establish that there is a triable issue." Matos v. Davila, 135 F.3d 182, 183 (1st Cir. 1998).

The facts, and all reasonable inferences that may be drawn from them, must be viewed in a light most favorable to the non-moving party. See Guzman–Rivera v. Rivera–Cruz, 29 F.3d 3, 4 (1st Cir.1994). A disputed fact is genuinely at issue if a reasonable factfinder could resolve the point in favor of the non-moving party. Id. See Rivera–Muriente v. Agosto–Alicea, 959 F.2d 349, 352 (1st Cir.1992). See also Euromotion, Inc. v. BMW of North America, Inc., 136 F.3d 866, 867 (1st Cir.1998). That is to say, "only when a disputed fact ha[ving] the potential to change the outcome of the suit ... [is] found favorably to the nonmovant [is] the materiality hurdle [ ] cleared." Parrilla–

*Burgos v. Hernandez–Rivera,* 108 F.3d 445, 448 (1st Cir.1997) (internal quotations omitted). Absent a genuine dispute of material fact, questions of law are appropriate for resolution at summary judgment. *See Jimenez v. Peninsular & Oriental Steam Navigation Co.,* 974 F.2d 221, 223 (1st Cir.1992).

## III. *DISCUSSION*

Given the nuances of the issues before the court, it is important to understand exactly what Conrail is seeking through its motion for summary judgment and, in turn, how Industrial is attempting to thwart that effort. Conrail's motion specifically seeks summary judgment on Count IV of its third-party complaint. Count IV sets forth a claim of express contractual indemnity and asserts that Section 8(b)(iv) of the parties' Agreement requires Industrial to indemnify, save harmless, and defend Conrail against all claims arising from Industrial's failure to maintain the sidetrack or any claims under FELA. Accordingly, Conrail "demands judgment against [Industrial] in the full amount of any sums it pays or is ordered to pay to [Laiho], together with interest, attorneys' fees, and costs." (Docket No. 13.)

Conrail's later description of its claim for relief, set forth in its reply brief (Docket No. 30), is, in the court's estimation, more expansive. Specifically, Conrail asks that its "motion for summary judgment should, on all counts, be allowed and [Industrial] be required to undertake Conrail's defense and reimburse Conrail for its past defense costs." (Id. at 13.) Thus, it appears that Conrail wants Industrial to immediately stand in Conrail's shoes, undertake its defense and reimburse it for its defense costs to date.

Resisting any obligation to indemnify, Industrial maintains that summary judgment is not appropriate because, notwithstanding the express terms of the parties' Agreement, issues of fact remain as to whether Industrial's act or omission created the unsafe condition which caused Laiho's accident. Industrial also argues that the doctrine of acquiescence should apply. The doctrine bars indemnification when the indemnitee is found to have known of and acquiesced in the dangerous or unsafe condition at issue.

After hearing arguments and reviewing the parties' briefs, the court finds that the indemnification provision of the Agreement is enforceable as a matter of law and that Conrail's motion for summary judgment should be allowed accordingly. This recommendation is limited to a declaration that Industrial must indemnify and save Conrail harmless from Laiho's claims should it be determined, at trial, that the unsafe condition resulted in whole or in part from any act or omission of Industrial or its tenants. The recommendation does not, however, include the more extensive relief Conrail describes in its reply brief. That relief may well be imposed once the issues of fact are resolved at trial. But for now, and as explained below, the court believes that there are genuine issues of fact which preclude the implementation of the remedy at this time.

The court's recommendation to allow summary judgment, as so limited, also incorporates a rejection of Industrial's claimed defense based on the doctrine of acquiescence. While not explicitly raised by Industrial in its answer to Conrail's third-party complaint, the doctrine of acquiescence appears to be generally incorporated in the defenses raised. As explained in detail below, however, the court believes, as a matter of law, that such a defense ought not be available in this case.

### A.

In its motion for summary judgment, Conrail contends that the Agreement between it and Industrial should be interpreted as requiring Industrial to indemnify Conrail for Laiho's FELA claim of personal injury. According to Conrail, Laiho's claim against it is covered by Section 8(b)(iv) of the Agreement, which reads as follows:

> Notwithstanding anything contained in this Section 8(b), and irrespective of any joint or concurring negligence of the Railroad, [Industrial] assumes sole responsibility for and agrees to indemnify, save harmless and defend the Railroad from and against all claims, actions or legal proceedings arising, in whole or in part, from (a) the failure of [Industrial] to comply with the requirements set forth in Sections 3 and 7 hereof, or (b) any claims, actions or legal

proceedings under [FELA] ... now or hereafter in effect, alleging or claiming, in legal effect, that the Railroad failed to correct or guard against an unsafe condition if the unsafe place to work or the condition resulted in whole or in part from any act or omission of [Industrial], its agents, employees, tenants, licensees or invitees.

(Def.Ex. A at 4.) Conrail argues that, as a matter of law, Industrial's "act or omission" in maintaining the applicable portion of the sidetrack caused Laiho's injuries, thereby requiring Industrial to indemnify Conrail.

A federal court exercising diversity jurisdiction must rely on state law to guide its interpretation of a contract. *See Mangla v. Brown Univ.*, 135 F.3d 80 (1st Cir.1998). Massachusetts courts employ the general rules of contract interpretation to construe indemnification provisions. As with any contract, a written indemnification agreement is to be interpreted in light of its "language, background and purpose." *Herson v. New Boston Garden Corp.*, 40 Mass.App.Ct. 779, 667 N.E.2d 907, 911 (1996). *See New York, N.H. & H.R. Co. v. Walworth Co.*, 340 Mass. 1, 162 N.E.2d 789, 791 (1959) ("Contracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purposes sought to be accomplished.") (quoting *Century Indemnity Co. v. Bloom*, 325 Mass. 52, 88 N.E.2d 906, 908 (1949)).

"Under Massachusetts law, a contract-based right to indemnification exists only if there is a binding contract between indemnitor and indemnitee in which such a right is expressed or from which it can be fairly implied." *Kelly v. Dimeo, Inc.*, 31 Mass.App.Ct. 626, 581 N.E.2d 1316, 1317 (1991). In essence, one party, the indemnitor, can agree to provide indemnification to another party, the indemnitee, for economic losses incurred in defending itself against a third party's legal claim. Indemnification applies when an indemnitee, compelled by operation of law to defend itself against its wrongful acts, seeks to recover from the indemnitor the entire amount of its loss. *See Elias v. Unisys Corp.*, 410 Mass. 479, 573 N.E.2d 946, 948 (1991).

In the present matter, neither party raises any issue with respect to the formation of their Agreement. Thus, there is no suggestion that the parties were of unequal bargaining power during their negotiations. *Kelly,* 581 N.E.2d at 1318 (when parties have "negotiated on a level playing field before entering their contractual arrangements, it is not necessary to explore the theoretical underpinnings of the indemnity doctrine in order to sustain the action of the trial judge"). Nor is there any real dispute with respect to the indemnification language itself. *See Id.* (in construing the parties' indemnification language, the court must consider its "ordinary and plain meaning"). By its own terms, Section 8(b)(iv) of the Agreement provides for indemnification of Conrail by Industrial under certain specified conditions, namely, satisfaction of either subsection (a) or (b).

Following that contractual trail, subsection (a) requires Industrial to indemnify Conrail for "the failure of [Industrial] to comply with requirements set forth in Section 3 and Section 7...." Neither party raises an issue with respect to Industrial's compliance with Section 7, which governs clearances for the applicable portion of the sidetrack. In contrast, Section 3, upon which both parties initially focus, requires Industrial to maintain the very portion of the sidetrack involved in Laiho's accident.[1]

Industrial admits that it owned and was responsible for maintaining the portion of the sidetrack at issue. (Third Party Def.Mem. at 2.) However, Industrial contests that the accident resulted from its "failure ... to

---

1. Section 3, "Maintenance," reads as follows:
   Said sidetrack shall be maintained ... and renewed to the satisfaction of the Railroad; the work shall be performed and the cost thereof borne as follows: That portion of said sidetrack shown in green on said plan is to be maintained, repaired and renewed by and at the expense of the Railroad; Those portions of said sidetrack shown in yellow on said plan are to be maintained, repaired and renewed by and at the expense of [Industrial].
   The bridge where Laiho allegedly injured himself is undisputedly located on that portion of the plan depicted in yellow. (*See* Def. Mem. Ex. C; Third Party Def.Mem. at 2.)

comply with the requirements set forth in Section 3," particularly any failure to maintain the railroad bridge and handrail. Accordingly, being most generous to Industrial, to the extent Section 3 is encompassed in Section 8(b)(iv)(a), an issue of fact exists as to whether Industrial failed to properly maintain the sidetrack pursuant to Section 3.

■ This factual dispute, however, is not outcome determinative with respect to the instant motion. As Conrail argues, a separate provision of the Agreement independently provides for its indemnification. Under subsection (b) of Section 8(b)(iv), Industrial is required to indemnify Conrail for "any claims, actions or legal proceedings under [FELA] ... alleging or claiming, in legal effect, that the Railroad failed to correct or guard against an unsafe condition if the unsafe place to work or the condition resulted in whole or in part from any act or omission of [Industrial]...." There is no dispute that Laiho, as an employee of Conrail, has a right to proceed under FELA or that his complaint alleges that Conrail failed to guard against an unsafe condition. The court need only decide then, as a matter of law, whether subsection (b) otherwise triggers the full and immediate indemnification which Conrail seeks in its reply brief. In the court's opinion, it does not.

■ Pursuant to subsection (b), Industrial must indemnify Conrail "if," and it is a big if, "the unsafe place to work or condition resulted in whole or in part from any act or omission of [Industrial] its agents, employees, tenants, licensees, or invitees." Even though Industrial admits that it was responsible for maintaining the sidetrack involved in Laiho's accident, it disputes Conrail's claim that the "rusted condition of the handrail was readily apparent and should have been discovered and repaired by [Industrial] in the exercise of due care." Given that factual dispute, the court cannot find now, as a matter of law, that the unsafe condition necessarily arose from either an "act or omission" by Industrial. The fact that Laiho's accident occurred on Industrial's sidetrack is not sufficient in and of itself to require Industrial to indemnify Conrail for his claim.

Not only must Laiho's claim be proven, but Conrail needs to demonstrate that "the unsafe place to work or the condition resulted in whole or in part from any act or omission" of Industrial.

■ Alternatively, Conrail attempts to impose on Industrial a responsibility to immediately undertake Conrail's defense in light of Industrial's obligation, pursuant to the Agreement, to indemnify Conrail from "any act or omission ... of [Industrial's] tenants." Thus, as with Industrial's acts or omissions, Sulco's acts or omissions could trigger Industrial's indemnification obligations under the Agreement. However, the language on which Conrail relies also follows the word "if." Thus, the unsafe condition must be shown in fact to have resulted in whole or in part from any act or omission of Sulco as Industrial's tenant. Resolution of that factual issue must await trial. At this time, the court has little if any information regarding Sulco's acts, its obligation vis-a-vis the sidetrack or its responsibility to notify Industrial of an unsafe condition. Moreover, despite Sulco having been notified by Conrail through Bressette of the unsafe condition, the court cannot, as a matter of law, impute that knowledge to Industrial.

■ That being said, the court is similarly unpersuaded by Industrial's argument that the parties did not intend to provide for indemnification in the event of Conrail's joint or concurring negligence. The language of Section 8(b)(iv) could not be clearer. Subsection (b) applies even if Conrail itself "failed to correct or guard against" the unsafe railroad bridge and handrail where Laiho was injured. Thus, Industrial's argument, that Conrail assumed responsibility for regularly inspecting the railroad bridge and handrail, carries no weight. (Third Party Def. Ex. D at 15.)

■ Subsection (b) expressly provides for indemnification even in the face of contributory negligence on Conrail's part. If otherwise triggered, Industrial's obligation to indemnify Conrail arises "irrespective" of Conrail's joint or concurrent negligence. Such express contractual language is valid and enforceable. *See, e.g., Boston & M. R.*

*R. v. Hall*, 284 F.2d 474, 477 (1st Cir.1960) (indemnification agreement will not be enforced when the indemnitee's negligence contributed to the loss "unless its express language requires it. Such an intent must unequivocally appear, and words of general import are not enough.") (quoting *Boston & M. R. R. v. T. Stuart & Son, Co.*, 236 Mass. 98, 127 N.E. 532, 534 (1920)); *Kelly*, 581 N.E.2d at 1318 (an express indemnity clause "rescues the indemnitee from paying damages, even when it is negligent"); *Walworth Co.*, 162 N.E.2d at 792 ("contract will not be construed as indemnifying one against his own negligence or that of his employees unless express language unequivocally so requires"). Had Industrial "wished to escape what it now perceives as an unfair result, it could have expressly so provided in the contract." *Bullard v. Central Vermont Ry., Inc.*, 565 F.2d 193, 199–200 (1st Cir.1977).

## B.

■■■ Despite the unequivocal language in the parties' Agreement, Industrial argues that the "doctrine of acquiescence" bars Conrail's indemnity claim. This, in fact, is Industrial's primary argument in opposition to Conrail's motion for summary judgment. The doctrine, adopted in certain jurisdictions, provides a defense to a claim for indemnification when the dangerous condition giving rise to the underlying liability was both known to and acquiesced in by the indemnitee. *See, e.g., Missouri Pac. R.R. Co. v. Arkansas Oak Flooring Co.*, 434 F.2d 575, 577 (8th Cir. 1970). The doctrine was "created by the common law of restitution, apart from any contract to indemnify," *Pennsylvania R.R. v. Erie Ave. Warehouse Co.*, 302 F.2d 843, 848 (3d Cir.1962), and is embodied in Section 95 of the Restatement of the Law of Restitution:

> Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after the

discovery of the danger, he acquiesced in the continuation of the condition.

Restatement (First) of Restitution, § 95. As Industrial acknowledges, however, Massachusetts courts have not adopted the doctrine for purposes of contractual interpretation. Accordingly, the court must apply those legal principles which Massachusetts courts would most likely adopt if faced with the issue. *See Mangla*, 135 F.3d at 80; *Perez–Trujillo v. Volvo Car Corp.*, 137 F.3d 50, 53 (1st Cir. 1998).

Industrial claims that the Supreme Judicial Court would adopt the doctrine of acquiescence in view of the SJC's invocation of the Restatement of Restitution in *Lydia E. Pinkham Med. Co. v. Gove*, 303 Mass. 1, 20 N.E.2d 482 (1939), and the doctrine's wide acceptance elsewhere. *Pinkham*, however, is inapposite to the case at bar. It does not cite § 95 of the Restatement nor does it involve a question of indemnity. Rather, it concerns breaches of fiduciary duty in the corporate context. Similarly, the other cases cited by Industrial, while referring to § 95 of the Restatement, do not address contractual indemnification, but common law or implied indemnity. *See Goulette v. Babcock*, 153 Vt. 650, 571 A.2d 74, 75 (1990) (common law indemnity); *Kennedy v. Pennsylvania R.R. Co.*, 169 F.Supp. 406 (W.D.Pa.1959) (same); *Falk v. Crystal Hall, Inc.* 200 Misc. 979, 105 N.Y.S.2d 66, 70 (N.Y.Sup.Ct.1951) (same); *Bedal v. Hallack & Howard Lumber Co.*, 226 F.2d 526, 532–533 (9th Cir.1955) (implied contractual indemnity).

■■■ The court need not predict what the Massachusetts courts would do. Even were the court to assume the doctrine viable in Massachusetts, a brief examination of applicable case law makes inexorably clear that it would not govern here. The doctrine of acquiescence was not intended to supplant express agreements. Rather, it was to be utilized "only insofar as it is consistent with the explicit language and the obvious purpose of the agreement." *Illinois Central Gulf Railroad Co. v. Crown Zellerbach Corp.*, 859 F.2d 386, 390 (5th Cir.1988). *See also Missouri Pac. R.R. Co. v. Rental Storage & Trans. Co.*, 524 S.W.2d 898, 910 (Mo.Ct.App. 1975). The doctrine is no defense when the

intention of the indemnitor to obligate itself is expressed in clear and unequivocal terms, as it is here. *See Missouri Pac. R.R. Co.,* 434 F.2d at 579. In such instances, the parties' agreement should be interpreted as granting the indemnitee the right to recover even though he is negligent. *Id.*

Moreover, the doctrine of acquiescence has been applied only in those cases where the language of the agreement expressly or impliedly provides for some comparison of the parties' relative negligence. *See, e.g., Parsons v. Sorg Paper Co.,* 942 F.2d 1048, 1050 n. 2 (6th Cir.1991); *Burlington Northern, Inc. v. Hughes Bros., Inc.,* 671 F.2d 279, 281, 285 (8th Cir.1982); *Steed v. Cent. of Ga. Ry. Co.,* 529 F.2d 833, 835 (5th Cir.1976); *Erie Ave. Warehouse,* 302 F.2d at 850 n. 2; *Houston Belt & Terminal Ry., Co. v. J. Weingarten,* 421 S.W.2d 431, 433–34 (Tex.App.1967). Here, in contrast, section 8(b)(iv) of the Agreement between Conrail and Industrial contains no such language. In fact, rather than releasing Industrial from indemnification or comparing its negligence to Conrail's, the Agreement provides that Industrial must indemnify Conrail "irrespective of any joint or concurrent negligence" on Conrail's part.

In sum, the doctrine of acquiescence does not apply to the instant case. *See Hader v. St. Louis Southwestern Ry. Co.,* 207 Ill. App.3d 1001, 152 Ill.Dec. 859, 566 N.E.2d 736, 743–44 (1991) ("when a court is firmly convinced ... that the indemnification agreement permits the indemnitee to recover for its own negligence, the defense of acquiescence is invalid."); *Kole v. Amfac, Inc.,* 665 F.Supp. 1460, 1465 (D.Haw.1987) (same) (discussing *Arkansas Oak Flooring,* 434 F.2d at 575). The language of the Agreement is express and its purpose is clear. In the

event of a claim arising under FELA and irrespective of Conrail's joint or concurring negligence, Industrial is contractually bound to indemnify Conrail if the conditions outlined above are met. It admits of no ambiguity.

## IV. *CONCLUSION*

For the foregoing reasons, Conrail is entitled to enforce its indemnification agreement with Industrial. Accordingly, the court recommends that Conrail's motion for summary judgment be allowed as specified above.[2]

DATED: March 13, 1998.

---

2. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of

Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.