SAMOS IMEX CORPORATION,
Plaintiff,

v.

NEXTEL COMMUNICATIONS, INC.,
Defendant and Third–Party
Plaintiff,

v.

BROOK HILL ENTERPRISES, INC., Edwards & Kelcey, Inc., and Valmont Industries, Inc., Third-party Defendants.

No. Civ.A. 97–11248–WGY.

United States District Court,
D. Massachusetts.

Sept. 29, 1998.

Herbert Abrams, Abrams, Roberts, Klickstein & Levy, Boston, MA, for Samos Imex, Samos Imex Corporation.

Carolyn McAboy, Campbell & Associates Professional Corporation, Boston, MA, Richard L. Edwards, Campbell, Campbell & Edwards, Boston, MA, Kathleen M. Guilfoyle, Campbell Campbell & Edwards Professional Corporation, Boston, MA, for Nextel Communication, Nextel Communications, Inc.

Mitchell Katzman, Dona Feeney, Law Offices of F.J. McDonald, Boston, MA, for Brook Hill Enterprises, Inc.

David J. Hatem, Burns & Levinson, Boston, MA, for Edwards and Kelcey, Inc.

Mark E. Tully, Goodwin, Procter & Hoar, Boston, MA, David L. Perut, Goodwin, Procter & Hoar, Boston, MA, for Valmont Industries Inc.

## *MEMORANDUM*

YOUNG, District Judge.

### INTRODUCTION

Samos Imex Corp. filed this tort action against the defendant, Nextel Communications, Inc. ("Nextel"), alleging injury to its building as a consequence of Nextel's erecting a cellular telephone monopole nearby. Nextel, in turn, filed a third-party complaint for indemnification and contribution against the three parties with whom it contracted with to perform work in connection with the installation of the monopole: Brook Hill Enterprises, Inc. ("Brook Hill"), Edwards & Kelcey, Inc. ("Edwards & Kelcey"), and Valmont Industries Inc. ("Valmont"). At the Motion Session on August 24, 1998, summary judgment entered on behalf of Nextel and against Samos in the underlying action. Nextel now seeks indemnification for its attorneys fees and costs from the third parties. The third parties move for summary judgment.

### FACTS

Nextel, a cellular communications provider, hired Valmont to design the specifications for a monopole and its foundation. The monopole and its plans were designed in accordance with appropriate engineering standards. The transaction was governed by various purchase orders and a General Terms and Conditions & Ordering Information Sheet which contain warranty language that included the following: "It is expressly agreed that Valmont assumes no liability for consequential damages or liquidated dam-

ages arising therefrom, and buyers (sic) remedy shall be limited to repair or replacement of defective parts as described above."

Brook Hill was hired by Nextel to perform construction work for the installation of the monopole. The installation plans were provided to Brook Hill by Nextel. The blueprints, site plans, and the like were provided to Nextel by contractors including Edwards & Kelcey. Brook Hill did not perform any engineering acts at any point in the process.

Nextel and Brook Hill executed a written contract under which Brook Hill was responsible for hiring and supervising subcontractors necessary to complete the work. Additionally, Brook Hill was responsible for ensuring compliance with all laws, regulations and local ordinances.

The Nextel–Brook Hill contract contains an express indemnification provision providing in pertinent part:

"Contractor agrees to and does hereby indemnify, save and hold harmless Owner ... from and against *any and all claims, liabilities, injuries, damages, lawsuits, costs or expenses (including reasonable attorneys' fees),* of whatever kind and nature, whether for death, personal injury, property damage or otherwise, arising out of or in connections with [Brook Hill]'s performance of *the work or any act or omission* of [Brook Hill], its Subcontractors its Sub–Subcontractor ... Owner shall have the right to defend its own interest in connection with any such claims ... and election ... shall in not way relieve Contractor of its obligations under this paragraph."

(emphasis added)

Additionally, Brook Hill was required to carry general liability insurance deemed primary to Nextel's and with Nextel as additional insured. Coverage was to include 1) premises and operations; 2) products and completed operations; 3) contractual liability insuring the obligations assumed by Contractor in this Contract; 4) broad form property damage (including completed operations); 5) explosion, collapse, and underground hazards; and 6) personal injury liability. Under provision XIII, Protection of Persons and Property, Brook Hill was responsible for initiating, maintaining, and supervising all safety precautions for the project to provide reasonable protection to prevent damage, injury, or loss to "other property at the site or adjacent thereto."

Nextel also hired Edwards & Kelcey, an engineering and consulting company, to perform certain engineering and design services related to the monopole project. They produced the site plans, blueprints, and electrical drawings for the project (which were provided to Brook Hill in the contract it signed with Nextel). Additionally, they were to observe the construction of the tower to determine if construction was completed in accordance with the design plans, including the digging of the caisson-type foundation specified by Valmont because of the geological limitations of the site. No problems with the work or the location of the monopole were raised by Edwards & Kelcey and reported to Nextel.

The contractual relationship was governed by various purchase orders and a multi-page document entitled "Scope of Work for Professional and Consulting Services, Construction Inspection and Material Testing" in which is incorporated as Exhibit A, General Terms and Conditions—Professional Services. Section 8 of Exhibit A includes an express indemnification clause which provides in pertinent part:

"[Edwards & Kelcey] ... shall procure and maintain, at its sole cost and expense, during the term of the work provided ... to owner, Professional Liability Insurance in connection with [Edwards & Kelcey]'s Services hereunder. [Edwards & Kelcey] ... shall procure ... property damage insurance ... shall insure ... against all liability of Consultant ... arising out of or in connection with [Edwards & Kelcey]'s Services provided for herein. [Nextel] shall be named as additional insured ...

"[Edwards & Kelcey] agrees to defend, indemnify and hold harmless [Nextel] ... from *all suits, actions, claims, demands, damages or losses, expenses and/or costs (including, but not limited to, reasonable attorney's fees and court costs) resulting*

*from any negligent act or omission* of [Edwards & Kelcey].

"With regard to any matters arising from acts or omissions of [Edwards & Kelcey] *other than those constituting [Edwards & Kelcey]'s Professional Services*, [Edwards and Kelcey] agrees to defend, indemnify and hold harmless [Nextel] ... from *all suits, actions, claims, demands, damages or losses, expenses and/or costs (including, but not limited to, reasonable attorney's fees and court costs) resulting from any negligent act or omission* of [Edwards & Kelcey]."

(emphasis supplied).

The agreement further provides that Edwards & Kelcey must take "all reasonable precautions to prevent damage to property, visible and concealed and restore the site to substantially the same condition existing prior to the consultant's entry."

## INDEMNIFICATION

Indemnification may arise under three theories. *See Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Authority*, 693 F.2d 1, 2 (1st Cir.1982). Two of these theories are contract-based: (1) an express indemnification clause as expressed in a written contractual agreement, and (2) implied liability, shown when there are special factors present that demonstrate the parties' intent to create a right of indemnification in a contract. *See id.* A right to indemnification exists as well at common law when a party is held vicariously liable for the negligent acts of another. *See id.*

Nextel's third-party complaint claims express and implied liability under its contracts with the third-party defendants, relying on its contractual relationship with each for indemnification.

### Express Indemnification

■ For both express and implied indemnification, the inquiry commences with the parties' contract. *See Kelly v. Dimeo*, 31 Mass.App.Ct. 626, 628, 581 N.E.2d 1316 (1991) (requiring proof of a valid and binding contract on which to base or imply the indemnification). The intent of the parties controls interpretation of the contractual

agreement as it allows for the rules of construction to give effect to the reasonable expectations of the parties. *See Strauss Veal Feeds Inc. v. Mead and Hunt, Inc.*, 538 N.E.2d 299, 301 (Ind.App.1989); *see also Fall River Housing Auth. v. H.V. Collins Co.*, 414 Mass. 10, 13, 604 N.E.2d 1310 (1992) (indemnity provisions are to be construed fairly and reasonably to ascertain intent and effect purpose of same). Therefore, interpretation of the indemnification provision begins by giving its terms their "ordinary and plain meaning." Often the presence of a requirement that the indemnifying party purchase insurance sheds light on the parties' intention to indemnify and defend against claims. *See Urban Inv. and Dev. Co. v. Turner Constr. Co.*, 35 Mass.App.Ct. 100, 107–08, 616 N.E.2d 829 (1993). Parties, particularly sophisticated parties contracting at arms length, should not be allowed to escape a provision for which they knowingly and voluntarily bargained. *See id.*

### Implied Indemnification

■ Lacking an express indemnity provision, the court may recognize an implied right to indemnification if "special factors" exist to support an intention that one party indemnify the other. *See Fall River Housing Auth.*, 414 Mass. at 14, 604 N.E.2d 1310. The special factors result from the contract provisions as viewed against the relationship between the parties. *See Monadnock Display Fireworks, Inc. v. Andover*, 388 Mass. 153, 156, 445 N.E.2d 1053 (1983) (holding town liable under implied indemnification in contract for police protection for injury to spectator); *Araujo*, 693 F.2d at 2 (noting relationship between vendor and purchaser doesn't normally give rise to indemnification rights). Damages, however, must be fairly within the scope of forseeability to permit inclusion under an implied right of indemnification. *See Great Atlantic and Pacific Tea Co. v. Yanofsky*, 380 Mass. 326, 333, 403 N.E.2d 370 (1980). Indemnification is not appropriately implied when contract provisions expressly limit indemnification. *See Fall River Housing Auth.*, 414 Mass. at 15, 604 N.E.2d 1310. Moreover, only an express indemnification provision can cause indemni-

fication of an indemnitee who is himself negligent. *See Kelly*, 31 Mass.App.Ct. at 629, 581 N.E.2d 1316.

### Common Law Indemnification

Indemnification may also be implied under common law principles. Indemnification generally is not permitted between negligent parties. It is allowed, however, when a party is exposed to liability because of the negligence of another. *See Rathbun v. Western Massachusetts Elec. Co.*, 395 Mass. 361, 364, 479 N.E.2d 1383 (1985). The exposed party, usually only passively negligent itself, is deemed to be constructively negligent and therefore vicariously or derivatively liable. *See id.; see also Araujo*, 693 F.2d at 3. Common law indemnification seeks to shift the liability for damages onto the actively negligent party. *See Rathbun*, 395 Mass. at 364, 479 N.E.2d 1383. Where multiple parties are negligent, indemnification is inappropriate. *See id.; see also Decker*, 389 Mass. at 35, 449 N.E.2d 641.

### Contribution

The theory of common law indemnification is similar to contribution between tortfeasors in that both parties must be liable to the plaintiff. *See Araujo*, 693 F.2d at 3. Massachusetts law provides for a right of contribution among two or more persons found jointly liable for injury to a person or property. *See* Mass.Gen.Laws ch. 231B, § 1(a). Therefore, the right to contribution is derivative of the joint liability to the plaintiff. *See Berube v. City of Northampton*, 413 Mass. 635, 602 N.E.2d 560 (1992); *Liberty Mutual Ins. Co. v. Westerlind*, 374 Mass. 524, 373 N.E.2d 957 (1978).

### VALMONT

Valmont contends that it has no liability on either an indemnification or a contribution theory to either Nextel or the other third-party defendants.

Valmont's contractual relationship with Nextel was for the purchase of the monopole. There is no language in the relevant written agreements which fairly and reasonably may be construed as constituting an indemnification clause. In fact, language in the purchase order warranty specifically excludes Valmont from any liability for consequential damages and limits a buyer's remedy to repair or replacement of defective · parts.

No party has raised an issue or proffered evidence of inappropriate or negligent design of the foundation. No party contests the appropriateness of the caisson-type foundation for the conditions on the site. With no affirmative showing by way of evidence, affidavit, or testimony that Valmont may have negligently acted or failed to act such that it caused any of the alleged property damage, Valmont cannot be held liable in tort for Samos' claim. In fact, the undisputed evidence suggests that Valmont was not negligent in its design and manufacture of the pole or the design of the foundation. No basis exists for a finding of actual or vicarious liability on the part of Valmont. Accordingly, this Court granted summary judgment for third-party defendant Valmont on Nextel's indemnification and contribution theories (counts V and VI of Nextel's third-party complaint).

The situation, however, is more complex with regards to Brook Hill and Edwards & Kelcey. Each is a party to a written contract with Nextel containing an indemnification provision which is triggered upon the filing of a claim or suit alleging liability and not merely upon a final judgment of liability. Such a claim, if it arises in connection with Brook Hill's and Edwards & Kelcey's work as subcontractors, may be maintained against Nextel and need not be successful to trigger their duty to indemnify Nextel.[1] The undisputed material facts as to each can be simply stated.

---

1. *See Urban Inv. and Dev. Co. v. Turner Constr. Co.*, 35 Mass.App.Ct. 100, 105–07, 616 N.E.2d 829 (1993) (general contractor entitled to attorneys' fees as reimbursement for costs in defending claims, pursuant to subcontractor's obligation to indemnify general contractor for any claims in connection with the subcontractor's work, whether or not the underlying claim was successful). *See also Herson v. New Boston Garden Corp.*, 40 Mass.App.Ct. 779, 786–87, 667 N.E.2d 907 (1996) (duty to defend is encompassed within the duty to indemnify).

## BROOK HILL

█ The relationship between Brook Hill and Nextel was governed by a written contract containing indemnification provisions. The indemnification runs to "any and all claims, liabilities, injuries, damages, lawsuits, costs or expenses (including reasonable attorneys' fees)" and covers Brook Hill's "work or any act or omission" by it or that of any of its subcontractors or employees. The plain language of the provision clearly encompasses claims and lawsuits. Thus, Brook Hill is required to indemnify Nextel for suits alleging negligence which fairly could include Brook Hill. Further, the contractual requirement that Brook Hill obtain liability insurance supports the inference that Brook Hill anticipated that it might be required to indemnify Nextel when it executed the contract.

Brook Hill's contract covered work to be performed in accordance with plans and specifications that were to be provided by Nextel. Brook Hill has a fair argument that it cannot be held liable to indemnify Nextel upon a claim predicated upon fault with the plans which it was bound to follow and as to which it had no input. The incorporation of the Code of Massachusetts Regulations into the contract via Exhibit A attached thereto, however, raises a reasonable inference that, notwithstanding the plans and specifications, Brook Hill was obligated to ensure the safety of the adjacent Samos building. The Regulations specifically provide for reasonable efforts to be made to protect existing structures and thus support a fair inference that the parties reasonably expected Brook Hill to monitor the repercussions of the construction. Likewise, Brook Hill's Vice President, William H. Gathright, Sr., testified to having an independent obligation to ensure that the work performed did not cause any property damage. The duties of Brook Hill, therefore, are sufficiently encompassing to be impugned by the Samos complaint, thus giving rise to Brook Hill's duty to defend Nextel and indemnify it for its attorneys' fees. *See Urban Inv. and Dev. Co.*, 35 Mass.App.Ct. at 105–07, 616 N.E.2d 829 (general contractor entitled to attorney fees as reimbursement for costs in defending claims, pursuant to subcontractor's obligation to indemnify general contractor for any claims in connection with the subcontractor's work, whether or not the claim was successful).

## EDWARDS & KELCEY

█ Like Brook Hill, Edwards & Kelcey also has a written contract with Nextel that provides for indemnification and for liability insurance. The provision provides for indemnification in the event of negligent acts or omissions in performance of Edwards & Kelcey's professional duties, the indemnification clause covering "all suits, actions, claims, demands, damages or losses, expenses and/or costs (including, but not limited to, reasonable attorney's fees and court costs)." Like Brook Hill's agreement, therefore, the indemnification activates upon suit or claim alleging liability for negligence and not just on final judgment of liability.

Edwards & Kelcey rely on the fact that they were under no duty or obligation to advise Nextel concerning the design or placement of the monopole and its foundation. A review of the purchase orders and agreements, including the "Scope of Work for Professional and Consulting Services, Construction Inspection and Material Testing" between the parties and Edwards & Kelcey, makes clear the Nextel had no input on these issues that were dictated by others contracted by Nextel. The Edwards & Kelcey role was to ensure that construction and installation was performed according to plans and specifications provided by Nextel. They performed a coordination and reporting function for Nextel which specifically excluded "2) supervision, direction or acceptance or [sic] the contractor's work, and 3) interpretation or modification of the project plans or specs." No evidence or testimony has been given to show that any negligent acts or omissions on Edwards & Kelcey's part occurred, or that these functions were not correctly fulfilled.

█ Exhibit A, General Terms and Conditions Professional Services, incorporated in the "Scope of Work for Professional and Consulting Services, Construction Inspection and Material Testing," includes a clause stating in pertinent part that Edwards & Kelcey will take "all reasonable precautions to pre-

vent damage to property, visible and concealed and restore the site to substantially the same condition existing prior to the consultant's entry." This clause fairly imposes responsibility on Edwards & Kelcey to inspect for effects of the Nextel project on other adjacent property, most specifically the Samos building located only feet away.

For these reasons, the Court denied the motions of Brook Hill and Edwards & Kelcey for summary judgment.